## HENRY FULLER

### v.

## MONROE HEATH et al.

1. MUNICIPAL CORPORATION—*time for passing appropriation ordinance for tax levy.* The general law relating to cities requires the city council, within the first quarter of each fiscal year, to pass an ordinance termed the annual appropriation bill, etc., and provides that no further appropriations shall be made at any other time within the year without the sanction of a majority of the legal voters, by petition, or by special election called for that purpose. It also provides that the fiscal year shall commence at the date fixed by law for the annual election, which is the third Tuesday of April, or at such *other time* as may be fixed by ordinance. Under this, the city council of Chicago adopted an ordinance changing the commencement of the fiscal year to the first day of January, and it was held that an appropriation ordinance passed on the thirtieth day of March was authorized, and formed a legal basis for the levy of taxes for such appropriations.

2. SAME—*law authorizing corporation to fix fiscal year not unconstitutional.* The general incorporation law relating to cities, fixing the commencement of the fiscal year on the day of the annual election of city officers, also provides that the commencement of such year may be fixed differently by ordinance. The latter part of this law is not void under the constitution, as being local or special, as it applies to all cities alike. The constitution does not require that the fiscal year of all cities, under the general law, shall begin on the same day.*

*It is held in *The People ex rel.* v. *Cooper et al.* 83 Ill. 585, that the clause in the constitution of 1870, which prohibits to the General Assembly the passing of "any local or special law incorporating cities, towns or villages, or changing or amending the charter of any town, city or village," does not apply to the character of the ordinances that may be adopted by municipalities properly incorporated, and which are within their unquestioned powers.

Syllabus.

3. SAME—*warrants on treasury may be made receivable for city taxes.* It is not unlawful to incorporate in a city warrant, drawn upon the treasury, a statement that the warrant is receivable in payment of city taxes for the year, as the statute of 1877 expressly makes such warrants receivable by the collector in payment of city taxes generally.

4. SAME—*tax collected need not be pro rated as to several appropriations.* Where the whole amount of city taxes levied is not collected, the part collected need not be set apart for each purpose named in the appropriation ordinance in the relative proportion that each particular tax bears to the whole sum levied. Where the amount of all the taxes collected is sufficient to meet all the necessary expenses, the funds in the treasury may be applied to the full payment of the sums needed to exhaust one appropriation, even if that should not leave money enough to cover the full amount of another appropriation, if the exigencies of the city do not require that the whole of the latter appropriation be expended.

5. SAME—*lawful warrants may be issued, though part of tax collected was unlawful.* The officers of a city will not be enjoined from issuing lawful warrants on the treasury for lawful purposes, even though a part of the levy be unlawful and void.

6. SAME—*power to levy school taxes.* The officers of a city may be invested with power by the legislature to levy and collect taxes for the support of common schools. Such laws, wherever found, are a part of the school laws of the State, and not strictly a part of the charter or law of the city. In such case the city officers are mere agencies of the public to carry into effect the objects and purposes of the general school system.

7. The adoption of the general incorporation law by a city, and the passage of a general school law, do not modify or impair any former special laws authorizing such city as a public agency to levy and collect taxes for school purposes.

8. MUNICIPAL INDEBTEDNESS—*warrants drawn against a particular tax levied is not the creation of a debt.* A warrant drawn on the treasurer of a city, in favor of persons performing services, or furnishing materials for the city, after the levy of a tax for their payment, in anticipation of its collection, and payable only out of such taxes when collected, is not the creation of a debt, within the meaning of the constitutional limitation. Such a warrant imposes no liability upon the city in whose behalf it is issued.

9. So, a warrant drawn on the city treasurer, reading: "from the taxes of the year 1878, appropriated and levied for the police department, when received by you, pay ——, or bearer, the sum of $—, being for services rendered, (or for materials furnished,) and payable out of the appropriation for said department, and charge the same to the police fund," and adding, "the taxes to be collected for account of this fund are specially appropriated, set apart and pledged to the payment of this and all warrants drawn thereon, and which warrants do not exceed 85 per cent of the appropriation made therefor," does

not create any corporate liability, and is not evidence of indebtedness on the part of the city. It is but a transfer of so much of a particular tax when collected.

10. CONSTRUCTION—*the rule in respect to municipal and individual obligations.* When a city has reached its constitutional limit of indebtedness, so that the creation of additional evidences of indebtedness is prohibited, in respect to a warrant drawn on its treasurer in anticipation of a tax already levied but not yet collected, not payable generally, but out of a special fund, and that only when it is collected, the general rule of construction as to liability of individuals will not be applied, but such warrant will be construed with reference to the law applying to such a state of case as though the same were incorporated in it, and held not to create any corporate liability.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and GEO. W. PLEASANTS and J. M. BAILEY, Justices.

This is a suit in chancery, begun in the circuit court of Cook county at the April term, 1878, by Fuller, a tax-payer of the city of Chicago, against Heath, the mayor, Farwell, the comptroller, and the city, as a corporation, asking an injunction forbidding the further issue of city treasury warrants (described in the bill) in the form mentioned, or any instrument purporting to add to the debt of the city, so long as the indebtedness of the city remains in excess of the constitutional limitation.

The bill charges that the ordinance purporting to make general appropriations for the fiscal year beginning January, 1878, was passed in March, 1878, and that the appropriations embraced therein amount to $3,777,757.23; that on March 25, 1878, an ordinance was passed levying taxes for that amount for that year, and directing the city clerk to certify the same to the county clerk; that all this was duly certified to the county clerk; that during all that time, the city of Chicago was and is indebted beyond the constitutional limitation of 5 per cent; that there have been prepared and issued to employees of the city, for services rendered during that fiscal year, instruments in the following form:

"CITY TREASURY WARRANT, 1878.

"No. —. $ —.	Chicago, Ill. ———, 1878.
" Treasurer of the City of Chicago:

"From the taxes of the year 1878, appropriated and levied for the (Police) Department, when received by you, pay ———, or bearer, the sum of $———, being for services rendered (or materials furnished), and payable out of the appropriation for said department, and charge the same to the (Police) fund.

" The taxes to be collected for account of this fund are specially appropriated, set apart and pledged to the payment of this and all warrants drawn thereon, and which warrants do not exceed 85 per cent of the appropriation made therefor.

" This warrant is also receivable in payment of city taxes for the year 1878.

Countersigned.	——— ———, Mayor.
			——— ———, Comptroller.

" Note.—Present in payment of city taxes after January 1st, 1879."

The bill further charges that the mayor and comptroller threaten that they will continue to issue, from time to time, for the current expenses for 1878, warrants of this character to the amount of $3,000,000, but not to exceed 85 per cent of the tax levy, and not faster than current expenses may require. It is further charged in the bill, that the city, being in debt beyond the constitutional limitation, has no lawful power to incur any further debt, and that said officers have no power to issue such warrants.

The prayer of the bill is, that the mayor, the comptroller and the city be enjoined and forbidden to further issue such warrants while the city remains indebted beyond the constitutional limit, and for general relief.

The defendants demurred to the bill. The circuit court sustained the demurrer and dismissed the complainant's bill. Complainant appealed to the Appellate Court of the First District, and there the decree was affirmed, and complainant appeals to this court.

Mr. EDWARD ROBY, for the appellant :

*The appropriation bill and taxing ordinance shown in the bill are void.*

Passed in March, they were passed at a time the law vested no authority. Rev. Stat. 227, secs. 89, 90, p. 231, sec. 111.

To the mayor and aldermen elected in April (Rev. Stat. 216, secs. 48, 49, 52) the power is committed by law, and not those who go out of office at that time. Rev. Stat. 227, secs. 88-90.

The last line of sec. 88, " or at such other times as may be fixed by ordinance," is void because its operation is to authorize the exception of some cities from the application of the law, which, but for such exception, would be their organic law.

The law fixing the time when corporate powers shall be exerted, or defining the composition of the body that shall exert the powers, is a part of the charter or law for the organization of the city. *The People* v. *Wright*, 70 Ill. 391; *The Thames Manufacturing Co.* v. *Lathrop*, 5 Conn. 550; *Sanderson* v. *La Salle*, 57 Ill. 441.

The law is uniform as to all cities. Const. art. 4, sec. 22, art. 11, sec. 1. The General Assembly can not delegate the power to change that law. Ibid. art. 4, secs. 11-13. The powers to be exerted by the mayor and eighteen aldermen, in the first three months after their election, depend on the general law of the State, and must be uniform throughout the State. They can not be local under different sections of the same law, or under different laws, nor depend on the will of the mayor and aldermen who had preceded them. The city council consists of a mayor and thirty-six aldermen, and the powers to be exercised by a mayor and eighteen aldermen to be elected in April, 1879, associated with the eighteen aldermen elected in April, 1878, must, on the first day of May, 1879, be uniform throughout the State of Illinois. The law conferring the power must be general, and vest the same power at the same time in each city council organized under it in the State.

It can not be local in any particular. *The People* v. *Cooper*, 83 Ill. 589.

*The appropriation and levy of $590,682.44 for school purposes* is void.

By the general school law the management of common schools in every district in the State is vested in a body elected by the people for that purpose in each district; or for location of school house sites, purchasing school sites, keeping schools more than nine months and borrowing money for such purposes, it is vested in the people of the districts, and these particulars are managed *by direct vote.* (Rev. Stat. 962, secs. 47, 48.) In the last part of sec. 80 is a local law vesting the exclusive management of schools in Chicago in a body *not elected by the people of districts*—not even elected by the people of the city. Throughout the State, but here, they are to be managed by direct vote and by elected boards; in this one locality they are to be managed by a special board not elected. No law could be framed in more direct contravention of the command: "*The General Assembly shall not pass special or local laws providing for the management of common schools.*" (Const. art. 4, sec. 22.)

Power to manage and support common schools is not found in the law of incorporation of Chicago; it is therefore not a corporate purpose of Chicago. Chicago can lay no tax except for corporate purposes of the city. The levy, therefore, is void. (*The People* v. *Trustees of Schools*, 78 Ill. 136, pp. 139, 140; Cooley on Taxation, 209; *Chicago and St. Louis R. R. Co.* v. *Sparta*, 77 Ill. 505; *Sleight* v. *The People*, 74 id. 49, 50; *Law et al.* v. *The People*, 87 Ill. 385.)

Article 8 of the constitution, and especially the penalties of section 4, show that no city corporation, or officer of a city, as such, can have any connection with the system of free schools of the State.

The city should not be permitted to obtain advances and spend money and pledge itself to collect and pay money for purposes for which it can not lay or collect a tax.

*The instruments shown in the bill are the contracts of the city, not the officers.* (*Bowen* v. *Morris*, 2 Taunt. 374, by Ld. Mansfield, p. 387; Angell & Ames on Corp. sec. 293.)

*They are promissory notes of the city or of the same nature.* (1 Daniel on Neg. Inst. sec. 430, p. 326; *Kelly* v. *Mayor of Brooklyn*, 4 Hill, 265, 266; *Steele* v. *Davis County*, 2 G. Green, Iowa, 469; *Varner* v. *Nobleborough*, 2 Greenl. 126; *Pease* v. *Cornish*, 19 Maine, 193; *Dalrymple* v. *Whittingham*, 26 Vt. 346-355; 1 Daniel on Neg. Inst. 102, sec. 129, also p. 100, sec. 128, and p. 78, sec. 98, and pp. 322, 323, secs. 424-426.) Daniel reviews authorities where such drafts by a municipal corporation on itself are not regarded as negotiable instruments, so as to cut off all equities of the corporation (secs. 427-435), but all these cases regard the instruments only as the acts, or incidents of the contracts of the corporation; not negotiable, because the officers had no power to issue negotiable instruments, but instruments on which the corporation is directly or contingently liable, as in *Kingbury* v. *Pettis County*, 48 Mo. 207-213. The cases all hold these certificates or warrants to be evidences of a debt of the corporation; or if they hold that they do not amount to *evidence* of the debt, they hold that they are *exhibits* of such a debt, which is not extinguished by their issue *and on which appropriate remedies may be had against the corporation.* Or if the corporation had no power to incur the debt, then the debt and warrants are held wholly void, and that no money raised by the corporation can be paid on them. (*Parsons* v. *Goshen*, 11 Pick. 396.) They all come to the doctrine of *The Floyd Acceptances*, 7 Wall. 676, that though in form of corporate acts, directing a corporate act of payment, and if authorized by law, such that they must be treated as promissory notes, as there is no authority in the corporation to issue them, and they are not in any contingency binding on the corporation according to their implication and import, they are void, and the claims of debt for which they are issued are void also.

*For a valuable consideration rendered on request, the law in all cases raises a positive and well defined undertaking and promise to pay—an implied or express assumpsit.*

The contracts raised by advancing money, rendering services and supplying materials to the city, at its request, to the extent of $3,000,000, for current expenses and necessities of the year, are not sales by the city, of anything.

The writing of the corporation, signed by its proper officers, stating that its disbursing officer will pay, or directing its disbursing officer to pay money, is merely an evidence of the method by which re-payment is to be made by the hand of the corporation.

The undertaking of the corporation, implied from the ordinances and these warrants, is that there shall be re-payment; or, limit it as much as possible by assuming that the city is not responsible for the acts of State officers, and it is that the city will do all in its power to get the money, and if certain money is received in the treasury of the city, the city officer in charge will pay the sum.

If the money was actually in the treasury, and the city, for a present consideration, should undertake that a certain sum therefrom should be paid to a certain person, by its proper officer, after December next, it would be the city's undertaking and promise. It is no less its undertaking and promise if the law makes it contingent on the receipt of the money. *But the law raises no such contingency, and the idea that the common law undertaking is in any manner modified, is a subterfuge invented to cover a clear infraction of the constitution, enacted in view of the common law.*

These instruments are corporate instruments; the act performed is to be performed by a corporate officer. He has given bonds to the corporation to do the duties of his office. He has undertaken nothing else. The man who now occupies the office may not occupy it when these instruments mature. His successor, when he enters the office, will undertake and promise nothing but to do the duties of his office, and he will

give bonds for faithful performance of that office,—nothing more. The undertaking that the officer to occupy that office shall do any act in that office, *is a corporate undertaking.* Such an undertaking, promise and liability for a consideration received by the corporation, these warrants evidence.

No tax is regarded as in the treasury till the money gets there. It is a mere chose in action, a right to demand, secured or unsecured, as the law fixes or does not fix a lien. The constitution creates no lien. Art. 9; R. S. 899, secs. 253, 254; p. 896, secs. 229, 230; p. 883, sec. 155; p. 884, secs. 156, 157, 158, 160, 177, 191, 230, 255; *Schaeffer* v. *The People,* 60 Ill. 179; *Hill* v. *Figley,* 23 id. 418; Burrell Law Dic., title, "Lien;" Bouv. Law Dic., "Lien;" *Dunlap* v. *Gallatin Co.* 15 Ill. 9; *Ryan* v. *Gallatin Co.* 14 id. 83; *Almy* v. *Hunt,* 48 id. 46; *Hamilton* v. *Chicago,* 22 id. 586. Chicago Common Council's Proceedings, 1869, 557.

The law does not require the anticipation of the revenue, but on the contrary, requires the levy to be made, and the money to be in the treasury substantially before the expenditure can begin. Const., art. 3, secs. 17, 18; art. 9, sec. 12; R. S. 227; City Incorporation act, art. 7, secs. 2, 3; gen. secs. 92–99,111, 113; p. 218, sec. 62; p. 227, sec. 89–91; p. 229, sec. 104; p. 878 sec. 122; p. 960, secs. 43, 44; *Comrs. of Highways* v. *Newell,* 80 Ill. 591; *Glidden* v. *Hopkins,* 47 id. 529.

Mr. JOSEPH F. BONFIELD, and Mr. GEO. W. SMITH, for the appellees:

The warrants described in the bill are an equitable assignment of so much of the tax levied for the year for which they were drawn, when collected, and operate to give the holders an equitable lien upon so much of such tax. *Phelps* v. *Northrup,* 56 Ill. 156; *Kingman* v. *Perkins,* 105 Mass. 111; *Moore* v. *Lowery,* 25 Iowa, 336; *Merton* v. *Nailor,* 1 Hill, 583; *Burn* v. *Carwallo,* 4 Milne & Craig, 690; *Grenfel* v. *Dean and Canons of Windsor,* 2 Bevan, 544; *Mitchell* v. *Winslow,* 2 Story R. 630; 2 Story's Eq. Jur. secs. 1840–6.

The manner in which the municipality exercises the authority to issue warrants, whether by a direct order upon its treasurer to pay so much money at a given time, at the office of its treasurer out of the fund appropriated and levied, is immaterial, even though it is irregular. *Van Hostrup* v. *Madison,* 1 Wall. 297; *Meyer* v. *City of Muscatine,* ibid. 391; *James* v. *Milwaukee,* 16 Wall. 162; *Woodhull* v. *Beam,* 3 Wall. 274; *Burr* v. *City of Carbondale,* 76 Ill. 455; *Maxcy* v. *Williamson Co.* 72 id. 207.

Under the decisions in the cases of the *City of Springfield* v. *Edwards,* 84 Ill. 626 and *Law et al.* v. *The People,* 87 id. 385, if these warrants operate to increase the indebtedness of the city, their payment can not be enforced, and they are void as a debt against the corporation; but we insist that they are not in effect obligations of the city, within the constitutional prohibition as interpreted by this court, and do not increase the indebtedness of the corporation.

They are in terms drawn upon special funds, and are payable out of such funds so drawn upon, and the parties receiving them, by doing so, under the decisions referred to, discharged the city from all liability on account of the service or materials for which they were given, and had to look alone to the collection of such warrant from such special fund. This being the case, it is giving one thing for another, and in no legal sense can it be an increase of the city indebtedness.

In the case at bar, the payment of the warrant was provided for by the appropriation, and levy of a tax. The holders do not seek to enforce any seeming liability against the corporation, which may be indicated by the phraseology of the warrant itself. They place themselves within the rule of law as declared by this court, and ask that the tax, when collected by the city, may be exchanged *pro tanto* for the warrants which they hold.

Upon this point counsel, in a brief and argument, cite various other authorities, some of which are given in the preceding case of *Fuller* v. *City of Chicago.*

20—89 ILL.

Upon the power of the city to levy and collect school taxes, reference is made to the Constitution, art. 8, sec. 2 ; Schedule, sec. 1 ; sec. 80 of the School-Law of 1872 ; R. S. 212, sec. 6 ; *Covington* v. *East St. Louis,* 78 Ill. 548 ; *Sheridan* v. *Colvin,* 78 id. 243.

The public education is a corporate purpose. *Vanover* v. *Justices,* 27 Ga. 354 ; *Comrs. Schools* v. *Comrs. of Alleghany Co.* 20 Md. 449 ; *Burr* v. *City of Carbondale,* 76 Ill. 455 ; *Taylor* v. *Thompson,* 42 id. 9.

Mr. JUSTICE DICKEY delivered the opinion of the Court :

It is insisted by counsel for appellant, that the appropriation ordinance, on which the tax levy is founded, is void because it was not passed at the time required by law.

By the charter (Gen. Laws of 1872, Rev. Stat. 1874, p. 211,) the general election for city officers occurs annually on the 3d Tuesday of April (sec. 48). Only half of the aldermen of the city are chosen each year—the term of such officers being two years. Hence the city council, immediately before the annual election, in its membership, is different from the city council immediately after the election. The charter also provides : "The fiscal year * * * shall commence at the date established by law for the annual election * * * or at *such other* times as may be fixed *by ordinance,*" (sec. 88). An ordinance had been adopted by the city council of Chicago, changing the time for the commencement of the fiscal year, and fixing it on the first day of January of each year. Section 89 provides that the city council shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, etc. ; and that no further appropriation shall be made, at any other time within the fiscal year, without the sanction of a majority of the legal voters, by petition or by election called for that purpose.

It is insisted by counsel for appellant, that the language of the charter, permitting the city council to change the beginning

of the fiscal year, is void and inoperative; hence, it is contended, the fiscal year, by law, began on the third Tuesday of April, and that this ordinance, not having been passed in the first quarter of the fiscal year, and not having the sanction of a majority of the legal voters in any mode required by law, is void.

It is contended, the last clause of section 88 of the charter, " or at such other times as may be fixed by ordinance," is void because its operation is to authorize the exception of some cities from the application of the law, which, but for such exception, would be their organic law; that the law, by the constitution, must be uniform as to all cities, and the General Assembly can not delegate power to change the law, for this would be to enact law which, as to some cities, is local and special.

In our view this position is not sound. The constitution nowhere requires that the fiscal year of all cities, under the general law, shall begin on the same day. The law, as it is, applies to all such cities alike. The substance of the provision is, that the beginning of the fiscal year may be fixed by ordinance, and in the absence of such ordinance, the fiscal year must begin on the third Tuesday of April. We can not perceive that this provision is either local or special. The beginning of the fiscal year having been fixed by ordinance in the city of Chicago on the first day of January, the general appropriation ordinance passed on the 30th of March was within the first quarter of the year, as required by law. We find no cause in this to question its validity.

It is strenuously urged that these warrants are contracts of the city, and of such character that they impose upon the city a new liability, and hence the city thereby becomes further indebted, in violation of the provision of the constitution limiting the extent to which a city may lawfully become indebted, and that therefore the issue of such warrants is unlawful.

The views of this court were carefully expressed in the case of *City of Springfield* v. *Edwards*, 84 Ill. 626. It was there

said, in substance, that a city already indebted beyond the constitutional limitation can not, lawfully, incur any new debt or liability, but that a city so situated may, to defray current expenses, anticipate the collection of taxes in case the taxes are actually levied, provided that the mode of appropriating or setting apart for that purpose a part of the taxes be such as to impose no liability upon the city—such that one thing is simply given for another. It is said: "Where a warrant or order, payable from a specific appropriation of the tax levied but not yet collected, is accepted in exchange for services rendered or to be rendered, or for materials furnished or to be furnished, so that there is, in fact, but the exchange of one thing for another, the duty remains for the proper officers to collect and pay over the tax, in accordance with the appropriation, but obviously, for any failure in that regard, the remedy must be against the officers and not against the corporation."

It is not perceived that the issuing of the warrants, mentioned in the bill, fail, in any material particular, to comply with the requisites thus laid down by this court. In fact they seem to be drawn and issued in strict compliance therewith. The bill shows that the taxes were actually levied. The warrant is drawn upon and payable only out of a particular fund or appropriation, and on its face it does not purport to impose upon the city any liability. The complainant, by his bill, does not charge, as a fact, that this warrant is not, when issued, accepted as a full and final payment for the services or materials for which it is given. It is not shown that "one thing" is not "simply given and accepted in exchange for another."

We are referred to authorities to show that drafts and orders of like form have been held to impose liability upon the municipal corporation in whose behalf they are issued, and to support the position that such instruments are contracts of the municipal corporation, and in the nature of promissory notes, and it is insisted that there is in this case an implied promise, on the part of the city, that the sum named in the warrant will be paid. We do not think so.

All persons are bound to know the law. And all contracts and all instruments of transfer of property, or any. interest therein, must be construed as though the law of the place of the contract or instrument were written out in full upon the face of the contract or instrument.

In this case these warrants are to be construed in the same manner as if it were written out on its face that no city can make a valid contract by which it can become indebted beyond the constitutional limit; and that even for meeting its necessary current expenses, no city can anticipate the collection of taxes for such purpose unless the tax for that purpose be actually levied, and then only by an exchange of a warrant drawn upon the proper fund, to be paid out of the taxes when collected, for the thing for which the warrant is given, and that by making this exchange, the city can not lawfully incur any liability, but the holder of the warrant must rely solely upon the ability and fidelity of the revenue officers in the collection and payment of the money mentioned in the warrant. With such words written out in full upon the face of the warrant, no one would think of construing these warrants as promises of payment by the city, either express or implied.

The drafts and orders construed by the authorities, quoted by counsel for appellant, were not issued under the same state of the law as surrounds the warrants in the case at bar; hence, their construction (though containing the very same words) can not be the same. The law which enters into and forms part of the body of every instrument, is not the same. These warrants, under the law, have no legal effect, except as an assignment, without recourse on the city, made by the city to the holder of the warrant of the part of the uncollected taxes mentioned in the warrant. This is the legal effect, and the only legal effect, of these instruments. They are muniments of title to the holder, without covenants on the part of the city. This court has heretofore so declared.

In *Law et al.* v. *The People ex rel.* 87 Ill. 400, this court, speaking of the city of Chicago, said, " A corporation which

has reached the constitutional limit of its power to create indebtedness, may, when a tax is levied, but not collected, draw against the fund thus levied and provided, although not in the treasury, and *thus* appropriate and virtually assign the amount specified in the warrant on the treasury to the person to whom it is issued and delivered; and that amount being (thus) assigned or set apart to him, when collected, he has a right to receive; and it becomes the duty of the officers to collect and pay to him, and failing in their duty, he would have an action against them for its recovery. But with a corporation thus situated, the legal effect of the issuing and receiving the warrant is, that the person receiving an assignment or an appropriation (in this mode) of so much of the specific tax already levied (and against which the warrant is drawn), *by receiving it* discharges the corporation from *all liability* on account of the services or articles for which it is drawn, and agrees to look to the tax thus levied and appropriated, and to the officers, for his pay; and he thereby discharges the corporation from any and every kind of liability therefor. In such case the warrant is given and received in full satisfaction for the services rendered or the materials furnished. Where a corporation is thus situated, and it hires labor or purchases materials (as it can incur no debt), it may, in thus hiring or purchasing, agree to thus transfer so much of the tax then levied, as will pay for the same, to the person performing labor or furnishing materials. And in case * * * the agreement was not so *expressed in terms, the law would imply such agreement,* and not that the corporation * * * could be sued and a recovery had upon such a contract." As to the views here expressed the court was unanimous, and we see no reason to qualify what was there said. The warrants in the case at bar seem to be in strict conformity with the ruling in the *Edwards case* and also in the *Law case,* and we hold that the city in no manner whatever became indebted by the issue thereof. It would, no doubt, be better that these certificates should, in some apt form, state, on their face, that the same are

accepted in full satisfaction of the services rendered or mate-
rials furnished, and that the city incurs no liability by the
issue of the certificates.   All men dealing in such certificates
would then be protected against misapprehension.   This,
however, would not affect or change the legal effect of such
certificates.

It is suggested that it is unlawful to incorporate in the
warrant a statement that " this warrant is also receivable in
payment of city taxes for the year" mentioned in the warrant.
In support of this suggestion, we are referred to the provisions
of the general act, which is the charter of Chicago, requiring
that the annual appropriation bill shall specify the amount
appropriated for each object or purpose, (sec. 89,) and directing
the treasurer to keep a separate account of each fund or appro-
priation and the debts and credits belonging thereto, (sec.
93,) and requiring all warrants drawn upon the treasurer to
state the particular fund or appropriation to which it is charge-
able.   It is suggested that, by reason of these provisions, a
portion of all the taxes collected must be set apart for each
purpose mentioned in the annual appropriation bill, and this
portion must bear the same proportion to the whole amount
collected, which the sum appropriated for that purpose bears
to the whole amount of the annual appropriation.

This does not seem to be a necessary consequence.   It may
turn out that the entire amount of the appropriation made for
one purpose may not be needed for that purpose, while the
whole of the appropriation for some other purpose may be
needed.   In such case, if the amount of all taxes collected be
sufficient to meet all the *necessary* expenses, it is not perceived
that there is anything in the statute to forbid the application
of the funds in the treasury to the full payment of the sums
needed, to exhaust one appropriation, even if that should not
leave money enough in the treasury to cover the full amount
of another appropriation, when the exigencies of the city do
not require that the whole of the latter appropriation should
be expended.

Be this as it may, these requirements are found in the general law of 1872, (re-enacted in the revision of 1874,) and since that time it is expressly provided by statute, that "city comptroller's warrants or orders on the city treasurer shall be receivable by the collector in payment of city taxes." (Laws of 1877, p. 171.) Whatever, therefore, may have been the true construction of the act of 1872, its provisions can not override the subsequent act of 1877, but if inconsistent with that act, must yield to its express provision that such warrants are, by law, receivable for city taxes.

It is also claimed, that the city of Chicago has no lawful authority to levy taxes or appropriate money for school purposes, and as a consequence from this proposition, the item in the appropriation ordinance for 1878 of $590,682.44 is without authority of law and void, and hence that amount of the tax levy for that year is void, and that on this ground the injunction sought by the bill ought to have been granted.

It is not perceived why the officers of the city ought to be forbidden to issue lawful warrants for lawful purposes, even if a part of the tax levy be unlawful and void. This is not a bill to enjoin and forbid the collection of a part of the tax levy, nor to forbid the issuing of warrants for school purposes. The bill does not contain any allegation that this tax for school purposes is void, or any allegation that any warrants are about to be issued for school purposes, or any prayer that the application of money to school purposes shall be forbidden.

We can not, however, sanction the proposition that the city of Chicago has been shorn of its power to support its schools. Before the adoption of the present constitution, the city of Chicago was, by law, given the title of all school lands within its boundaries, and the share of the school fund belonging to its people, and was clothed with the power of collecting taxes for school purposes, and charged with the duty of supporting its schools. The laws on this subject in force at that time, whether embodied in form in the charter of the city, or in amendments to the charter, or in laws not purporting in form

to be a part of its charter, must be regarded as a part of the school laws, and not as strictly a part of its charter for strictly city purposes, (*Speight et al.* v. *The People,* 87 Ill. 600). The General Assembly, before the constitution of 1870, had provided for the establishment and support of free schools in every part of the State,—in most cases providing special political machinery for that purpose, and in other cases providing for the use of city officers to accomplish the legislative intention. The constitution of 1870 provided, that "The General Assembly shall provide a thorough and efficient system of *free* schools, whereby all children of this State may receive a good common school education." (Sec. 1, art. 8.) And in sec. 22, art. 4, it is declared, "The General Assembly shall ·not pass local or special laws   *   *   *   providing for the *management* of common schools." And by sec. 1 of the schedule it is declared, "That all laws in force at the adoption of this constitution, not inconsistent therewith,   *   *   *   shall continue and be as valid as if this constitution had not been adopted." ·

In construing these provisions of the constitution, this court (in *Speight* v. *The People, supra,*) held that there is no limitation in the constitution as to the agencies the State shall adopt in providing this system of free schools, and that the General Assembly has full power to select or prescribe the agencies by which school taxes shall be levied, collected, held and disbursed for school purposes, and that all laws, whether in city charters or elsewhere, designed to affect free schools, may be regarded as *school laws*—as part of the law intended to provide a system of free schools; and that sec. 22, art. 4, as to the power of passing special laws, relates merely to the *management* of common schools, that is, to the conduct of common schools in imparting instruction, and does not relate to the matter of providing the necessary funds for their support.

It follows, that neither the adoption as its charter, by the city of Chicago, of the general law relating to cities and villages, nor the passage of the general school law, has modified

or impaired the former laws authorizing the city of Chicago (as a public agency) to levy and collect taxes for school purposes.

After a careful consideration of all the suggestions in the very elaborate argument of counsel for the appellant, we find no sufficient ground to disturb the judgment of the Appellate Court in this cause.

The judgment of the Appellate Court, affirming the decree of the circuit court, is therefore approved and affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT: I concur in this decision for the reason that I think it overrules the cases of *Edwards* v. *The City of Springfield*, 84 Ill. 626, and *Law* v. *The People*, 87 Ill. 385. For an expression of my views on the question discussed, reference is made to my dissenting opinion in the *Law case, supra.*