(No. 24034.—

THE PEOPLE *ex rel.* Joseph L. Gill, County Collector, Appellee, *vs.* EDWARD HAMILTON, Appellant.

*Opinion filed June 11, 1937.*

ROBERT N. HOLT, and SCOTT, MACLEISH & FALK, for appellant.

THOMAS J. COURTNEY, State's Attorney, MANUEL E. COWEN, CHARLES CENTER CASE, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (JOSEPH B. FLEMING, and THOMAS M. THOMAS, of counsel,) for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The objector, appellant here, filed in the county court of Cook county his objections to certain taxes levied in 1934 by the Chicago Park District against his property. The objections were overruled. The court entered judgment and order of sale. The cause comes here on the objector's appeal.

The major question for decision is whether the Chicago Park District had the legal authority to levy a tax for the year 1934. Before the creation of that district there were twenty-two park districts in the Chicago area. Nineteen of these were organized under the act of 1895. (Smith-Hurd Stat. 1933, chap. 105, pars. 256-295, pp. 2027-2037; Cahill's Stat. 1933, chap. 105, pp. 2017-2027.) The three remaining districts, South, Lincoln and West, were organized in 1869 under special laws. 1 Private Laws of 1869, pp. 342-379.

It is the objector's contention that the Chicago Park District had no power to levy a tax for the year 1934. He urges that all districts created under the act should have levied their taxes and filed their levies with the county clerk within the first quarter of the fiscal year which ex-

pired on March 31, 1934. He further states that such districts could not anticipate that the Chicago Park District would be organized but that it was the duty of the several duly organized districts to have proceeded with their levies and made provisions to operate through the year. If the Chicago Park District was organized, it would succeed to such funds collected through such levies and disburse the funds in the carrying on of the park work. It does appear from the stipulation in the record that some park districts other than Old Portage and Sauganash passed levy ordinances prior to May 1, 1934. No taxes are purported to have been extended on any of such levies other than Old Portage and Sauganash. The Chicago Park District came into existence May 1, 1934.

The objector urges that the act of 1895 above cited provided that the appropriations for park districts organized under the act must be passed within the first quarter of the fiscal year. The objector is in error in his position that the statute of 1895, as it existed in 1934, required the tax to be levied in the first quarter of the now superseded park districts' fiscal year. Section 22 of the act of 1895 required park districts organized under that act to levy their taxes at the same time and in the same manner, as nearly as practicable, as the taxes were then levied for city and village purposes. Section 1 of article 8 of the Cities and Villages act provides that cities and villages shall levy their taxes on or before the third Tuesday of September of each year. (Smith-Hurd Stat. 1933, chap. 24, p. 361; Cahill's Stat. 1933, chap. 24, p. 337.) The statute requiring park districts to levy their taxes in the first quarter of the fiscal year was added by an amendment approved July 10, 1935. (Laws of 1935, p. 1034.) The three park districts organized under the private laws above cited were not required to levy their taxes prior to May 1 of each year.

The objector also relies upon a letter from the comptroller of the Chicago Park District dated August 7, 1935,

to the county clerk in which he states, in substance, that that district, on September 10, 1934, adopted a tax levy ordinance for the year 1934 which superseded all tax levies which may have been filed by any of the superseded park districts, with the exception of the taxes for corporate purposes for which levies were filed prior to May 1, 1934, by the Old Portage and Sauganash park districts. This letter cannot improve the objector's position on this branch of the case. Even though any such districts had adopted tax levy ordinances and duly certified them to the county clerk in those cases where no tax anticipation warrants had been issued against such levies, then, under the authority of section 11 of the Consolidation act, (Smith-Hurd Stat. 1933, chap. 105, pp. 2054-2059; Cahill's Stat. 1933, chap. 105, pp. 2098-2104;) the Chicago Park District could repeal, abrogate or amend any ordinance, resolution, by-law or rule theretofore made by any superseded district. This language is broad enough to include the repeal of any tax levy against which no anticipation warrants had been issued or no rights of third parties intervened. It is obvious that, conceding that other now superseded districts did, in 1934, make and file levies while in corporate life, the Chicago Park District, by its action, legally repealed all such ordinances under the provisions of section 11.

The objector further urges in support of this branch of the case, that the statute did not authorize the levy of a tax, in 1934, by the Chicago Park District. By section 7 of the Consolidation act the Chicago Park District was vested with all the powers theretofore vested in the superseded districts. Section 2 of the act provides that all powers and duties vested in or exercised by the former districts through their corporate officials should be vested in or exercised by the Chicago Park District. It is admitted that each of the twenty-two original park districts which, by the Consolidation act, were welded into the Chicago Park District, had the statutory power to levy taxes and

possessed certain functions in their corporate capacity with which to raise taxes to meet expenses. This right existed to levy taxes for the year 1934 until extinguished by the creation of the Chicago Park District to which, by implication, the power to tax was transmitted. (*Mount Pleasant* v. *Beckwith,* 100 U. S. 514, 25 L. ed. 699.) It was not the intention of the legislature that there should be a hiatus in the power to levy a tax during the interim from the time of the creation of the Chicago Park District on May 1, 1934, and the simultaneous corporate death of the twenty-two original districts, until a tax could be levied by the Chicago Park District for the year 1935.

In our opinion this view is amply justified by section 19 of the Consolidation act. (Smith-Hurd Stat. 1933, p. 2057; Cahill's Stat. 1933, p. 2102.) This section specifically and in no uncertain language gives the Chicago Park District the power to tax in the following words: "The Chicago Park District Commission is hereby empowered to levy and collect a general tax on the property in the park district for necessary expenses of said district for the construction and maintenance of the parks, boulevards," etc. It further provides that the amount to be raised by the tax in each year should be certified to the county clerk on or before the second Tuesday in September of each year. Section 2 provides that the referendum vote on the proposition to organize the Chicago Park District should be had on the second Tuesday in April, 1934. If the voters failed to adopt the act on that date, on the petition of 25,000 legal voters of that district, a further referendum vote might be had. By consulting section 17 of the act (Smith-Hurd Stat. 1933, p. 2056; Cahill's Stat. 1933, p. 2101;) we find that provision is made for a corporate fiscal year as of January 1, to December 31, to commence, however, after the year in which the Consolidation act was adopted. It is significant that the same section provides for the apportionment of the revenue to the corporate expenses. The

corporation, for the year following its organization, is required to budget by an appropriation ordinance on which a public hearing must be had. No such limitation is proposed for the year in which it came into being. For that year the requirement is merely that the appropriation for expenses shall be an ordinance of record. The provision for a public hearing on the proposed appropriation for the years succeeding the year of the corporate birth does not apply. We are fully in accord with the principle, and the enforcement thereof, urged upon us by the objector, that the power to tax must be given a strict construction, but here, even under a rigid application of the rule, we believe the power to tax is granted. Our conclusion is that the Chicago Park District had complete statutory authority to levy a tax for the year 1934.

It is next urged that if it be decided that the Chicago Park District had power to levy a tax for 1934, then only two-thirds of the annual rate levied could be extended lawfully. It is the function of the legislature to declare, if it so desires, the corporate or fiscal year of those municipal corporations created by it, and to set up a system of taxation machinery and tax rates within the provisions of the constitution. The Chicago Park District had succeeded twenty-two park districts which were functioning up to the day they were extinguished by the legal appearance of the Chicago Park District. It is conceded that each of these superseded park districts could have levied a tax for 1934 to enable them to carry on. It would seem to be the legislative thought that the successor of twenty-two park districts should inherit the same power to levy for the full year 1934 that the original several component parts had, which, by the Consolidation act, constituted the whole. Whether the power granted to levy for the whole year was wise is not for this court to decide. The question of the tax rate and the basis of time on which it was to be levied, is purely a legislative one. Unless a legislative act limits

the term for taxation, that term carries with it the fractional part of the year. Here the General Assembly might, by apt language, if that had been its legislative mind, have limited the levy proportionately to the unexpired portion of the tax year and decreased the tax rate to be extended, but it did not.

The case of *People* v. *Illinois Central Railroad Co.* 361 Ill. 590, cited by the objector in support of this phase of the case is not in point. The issue there was the validity of a levy made by the county for corporate purposes for more than a one-year period. A levy was made at twenty-five cents for a one-year period and six and one-fourth cents for a three-month period. The General Assembly, by statute, (Laws of 1933, p. 417,) had provided for a budget system for counties and fixed the budget period. By reason of its prior fiscal year not being in conformity with the new statutory fiscal year, the county board, in order to bring the county within the provisions of the statutory budget year, found it necessary to change the date of its fiscal year and in doing so it was imperative that it make the levy for the twelve-month and three-month periods, respectively. We held that the action of the county board in thus making the county levy was within the statute.

The next question presented by the objector, that the tax levied by the Chicago Park District should have been extended over all the property of the district, is not without its difficulties. It is conceded that the tax was extended against the property in the district, exclusive of the property in the Old Portage and Sauganash park districts. The objector argues from the calculations submitted by him, that, if the amount levied had been extended against all the property of the district a rate of .29 would have been produced instead of the .30 rate extended. The fiscal year of the two park districts, Old Portage and Sauganash, had begun before the Chicago Park District was organized. The record shows that the Old Portage park district on

February 9, 1934, passed its tax levy ordinance which was regularly certified to the county clerk on March 10, 1934. Thereafter, but previous to May 1, 1934, the Old Portage park district sold anticipation warrants against the 1934 tax levy. On March 19, Sauganash park district passed its tax levy ordinance and duly certified it to the county clerk on April 3, 1934. This district likewise issued and sold tax anticipation warrants against its levy. The levy in each of the two latter districts was extended against the property of the respective districts as they existed prior to the consolidation. Upon the negotiation of these warrants, the warrants became a lien upon the taxes to be collected from such respective levies. There was an appropriation *pro tanto* of such taxes, when collected, to the extent necessary to discharge the amount of the warrants. (*Fuller* v. *Heath,* 89 Ill. 296.) This fund was the only source to which such owners could resort for the payment of their warrants. There was no general responsibility to repay to the persons from whom the money was obtained for the anticipation warrants. (*City of Springfield* v. *Edwards,* 84 Ill. 626; *Berman* v. *Board of Education,* 360 id. 535.) It follows that neither of these two districts, after having for value sold and delivered its tax anticipation warrants, could legally retract its levy. Neither could the successor municipality, the Chicago Park District, annul such levy. The taxes, when collected and paid over from these two levies to the Chicago Park District, were required to be applied for the purpose for which they were appropriated and levied. *Mount Pleasant* v. *Beckwith, supra.*

The Chicago Park District in its levy did not include any sum to meet the corporate requirements of the two park districts, Old Portage and Sauganash. The levies made by such districts were the only levies made for that purpose. It was stipulated on the trial that if the Chicago Park District had included within its levies the funds re-

quired to meet the corporate demands of the former Old Portage and Sauganash districts, and if such levies had been extended against all the property in the Chicago Park District, including that in the two extinguished Old Portage and Sauganash park districts, a rate of .30 would have been produced. If this had been done the objector's tax rate would have been the same as it was under the levy made by the Chicago Park District. He is not financially injured by reason of failure to extend the tax levy of the Chicago Park District against the property of the two extinct districts last named. When we consider that if the amount necessary to provide for the corporate business of such districts had been included in the Chicago Park District levy the objector's tax rate would have equaled the tax rate extended against his property, the fact that the tax-payers in the two superseded districts do not pay as high a rate under the levy made by such respective districts, does not profit the objector. He cannot complain even though the amounts be unequal, so long as he does not pay more than his just portion of the tax. (*Spencer & Gardner* v. *People,* 68 Ill. 510; *Merritt* v. *Farriss,* 22 id. 303.) It was not within the statutory power of the Chicago Park District to levy a tax to pay anticipation tax warrants lawfully issued by another municipality, even though the Chicago Park District was the successor of the issuing district, nor could it pay such warrants from any tax levied by it.

Section 10 of the Consolidation act protected the owners of those warrants in their right to proceed against the tax levied by the issuing districts. The anticipation warrants not being a debt, as that term is generally understood, of the two superseded districts, a tax-payer of the Chicago Park District could successfully have maintained objections to the validity of any tax levied against the property of the Chicago Park District for the purpose of paying these

warrants. It was not a legal obligation of that body politic. *Berman* v. *Board of Education, supra.*

It was the legal duty of the county clerk to extend the two tax levies respectively for Old Portage and Sauganash districts. The Chicago Park District, having determined for good legal reasons not to interfere with the levies made by the Old Portage and Sauganash districts, by its action adopted those levies made before the consolidation, for the corporate purposes of the territory included within those districts and directed the levy in question to be extended against the remainder of the territory. The objector relies on *People* v. *Noyes,* 295 Ill. 355. The decision there was based upon a school tax levied against the property of a district located in three counties. The statute required the certificate of levy to be filed in each county. It was filed in one county. The record showed it was not filed in another county. As to the third county, the record was silent. It was held that the tax could not be collected in the county where the levy was filed for the reason that, in the situation presented, the tax was not uniform in the territory of the district in each of the three counties. That case does not control here. The territory alone which originally comprised the two districts, Old Portage and Sauganash, was liable for the tax so levied by such now superseded districts. The legal effect of that procedure was to withhold that territory, for corporate taxation purposes, for the year 1934, from the successor, Chicago Park District. The Chicago Park District recognized that fact and very properly did not attempt to tax such territory for corporate purposes for that year for the remainder of the territory. In pursuing that method, it did not come in collision with the uniformity tax provisions of either section 9 or section 10 of article 9 of our constitution.

The judgment of the county court is correct and is affirmed.                                   *Judgment affirmed.*