# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## SOUTHERN GRAND DIVISION.

### JUNE TERM, 1874.

## F. M. MAXCY *et al.*

*v.*

## THE COUNTY COURT OF WILLIAMSON COUNTY *et al.*

1. MUNICIPAL BONDS—*irregularities in the issue do not affect the validity, unless they go to the power to issue.* Where county bonds upon subscription to a railroad have been issued and got into circulation, all reasonable presumptions will be indulged in favor of their regularity, until overcome and rebutted; and even if irregularities are shown, they will not invalidate the bonds, unless they go to the power of the county court to issue them.

2. It will be presumed, when such bonds are found in circulation, that the legal steps have been taken to authorize their issue.

3. Where the county court was empowered, by law, to issue the bonds of the county, upon a vote to be taken upon the subject in the manner prescribed by the law authorizing such vote and the issue of bonds, and such bonds were issued, the fact that the evidence of the compliance with the law in calling and conducting the election, giving notice thereof, etc., may be lost or destroyed, does not affect the validity of the bonds, if, in fact, the law was complied with.

4. PAROL EVIDENCE—*to establish lost record of election.* Where the record or written evidence of the fact that a notice of an election to vote on the question of the county subscribing to a railroad and issuing bonds

thereto, and of the result of such election, is lost, it is competent to prove such facts by parol.

5. FRAUD—*as against bona fide holders.* Where there is fraud in obtaining the issuing of bonds before the completion of a railroad to a given point, when, by the terms of the agreement, they were not to be issued until the completion to that point, such fraud does not affect the consideration of the bonds or their validity in the hands of *bona fide* holders.

APPEAL from the Circuit Court of Williamson county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Mr. EDWARD V. PIERCE, and Mr. WM. W. CLEMENS, for the appellants.

Mr. WM. J. ALLEN, and Mr. JOHN H. MULKEY, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Appellants, on behalf of themselves and other tax-payers of Williamson county, filed this bill in chancery. It alleges that they are property owners, and that the Auditor and Treasurer of this State had levied $1.30 on each $100 worth of property liable to and assessed for taxation in the county, as a tax, for the year 1872, to pay the interest on railroad bonds issued by the county court of the county. The validity of this railroad tax is denied, and an injunction is prayed to stay its collection.

An act of the General Assembly was adopted on the 7th of March, 1867, incorporating the Murphysboro and Shawneetown Railroad Company, by the provisions of which, upon the petition of one hundred legal voters of the county to the county clerk, he was authorized to give notice for a vote on the question of the county of Williamson subscribing $100,000 to the capital stock of the company. The notice of the submission was to be made at a regular election of county officers. A poll was opened at the November election, 1868, which

resulted in favor of a subscription of $100,000 to the stock of the company, and on the 12th day of December, 1868, the county court subscribed that sum, and the bonds were issued.

It is also charged, that the county court entered into an agreement to sell the $100,000 of stock received for the bonds to the company for $5000. It is further charged, "that there is no record, evidence or papers on file in said court, establishing or showing, from any original source or record, proofs that the county clerk of said county ever posted any notices of the submission of the question of such subscription, etc., to the voters of said county, at a regular election," etc. ; that there is no such evidence as to what number of legal votes were cast, or what number constituted a majority of the voters of the county, and it is charged, for that reason the bonds were illegally issued ; that on the 10th day of March, 1869, an act was adopted by the General Assembly to change the name of the railroad, and to make valid the subscription and agreement of the county, and to amend the charter of the company. There was a number of orders of the county court extending the time for the completion of the road, so as to receive the bonds.

An answer was filed, and a hearing was had on the bill, answer, replication and proofs, when the relief sought was denied, the injunction dissolved, and the bill dismissed, and complainants appeal to this court.

The bonds having been issued and got into circulation, all reasonable presumptions must be indulged in favor of their regularity, until overcome and rebutted ; and even if irregularities are shown, they will not invalidate the bonds, unless they go to the power of the county court to issue them.

It is urged, that there is no evidence that the requisite notice was given calling the election, or that it resulted in favor of subscription. It must be presumed, when such bonds are found in circulation, that the legal steps have been taken to authorize their issue. It may, no doubt, be shown, that there was a want of compliance with the essential requirements of

14—72d Ill.

the law. but. until shown, we must presume that the officers have performed their duty, and the bonds were regularly issued and are valid.

Nor is the mere allegation and proof that evidence of the notice or result of the election can not be found, material to the validity of the bonds. If the notice was given, and the election resulted in the required majority, then there was power conferred on the county court to issue the bonds, and, being issued under competent authority, they could not be affected by the subsequent loss or destruction of the evidence that they were legally issued. It was the legal issue of the bonds that conferred the right, and not the preservation of the evidence of the fact; and if the evidence was required, it has been adduced in this case—not record or written evidence, it is true, but the best evidence attainable. The written evidence being lost or destroyed, it was competent to prove the fact by parol; and it appears, in evidence, that the notice was given, and that the election resulted in a very decided majority in favor of subscription.

It is also urged, that the bonds were issued contrary to the provisions of the act of the 10th of March, 1869, vol. 3, Priv. Laws, p. 321, amending the charter of the company. That act provided, that the subscription and agreement to the company should be valid and binding, and that the county court, in consideration that the company would build their road to the town of Marion, should assign the certificate of stock received from the company back to the corporation without consideration, and gave to the company until the first of January, 1871, to complete the road to the town of Marion.

We discover nothing in this act which, in anywise, limits the time for issuing these bonds. The scope of this curative act was to render the election and subscription valid, and to legalize the agreement to assign the certificate of stock to the company, provided the road should be completed to the town of Marion by the date named; but it left the county court to exercise the power, as it was before to issue the bonds, which

the court did on the completion of the road to that point, as they had resolved they would. Hence, it is a matter of no consequence, as far as this question is concerned, whether that law is or is not constitutional. When a question as to the transfer of the stock held by the county shall arise, then the inquiry may become important.

It is also urged, that the bonds were issued bearing date January 1, 1872, and after the adoption of the constitution of 1870. and their issue was not under a vote of the people had, under authority of law, prior to the adoption of the constitution, and is contrary to the 12th sec. of art. 9 of that instrument. The question thus sought to be presented does not arise on this record. As we have seen, there is a presumption from the fact that the bonds were issued, and proof adduced on the trial, there was such a vote taken as is required by that section, and hence the bonds might legally issue after the new constitution went into operation. The same is true of the separate section of art. 14, prohibiting municipalities from subscribing to railroad stock, or to make any donation to such a company. These provisions contemplate and fully provide for just such a subscription as was made in this case.

It is urged, the issue of the bonds was procured by fraud, and they are. therefore, void. Even if fraud is shown, there is no pretense that the present holders of the bonds are chargeable with it, or of notice that there was any fraud. If there was fraud it was not in obtaining the bonds, but simply in procuring them to be issued, perhaps, before the road was fairly completed. The fraud in nowise affected the consideration of the bonds. It might, perhaps, be effectual against all but *bona fide* holders of the bonds.

In the case of *Dunnovan* v. *Green,* 57 Ill. 63, it was held, that the Auditor has power, under the 4th section of the act of 1869, to levy a tax to pay the interest on registered bonds. (Sess. Laws, p. 316.) These bonds having been registered, the State Auditor was authorized to make this levy. Although

the county court is one of limited powers, it nevertheless had, when the people so voted and authorized it, power to make the subscription and issue the bonds ; and the people, in voting for subscription, so far as this record discloses, imposed no conditions or limitation as to the time when the subscription should be made, and it was in the sound discretion of the court to fix the terms and conditions upon which they would issue the bonds.

We fail to perceive how the sale of the certificate of stock to the company for $5000 can, in any manner, affect the rights of the holders of the bonds of the county. It surely is not intended to be insisted, that, because the county has, by any means, lost the consideration it received for the bonds, innocent holders, who had nothing whatever to do with the sale of the certificate, must lose their bonds. As well contend that a person who purchases property, for which he gives his note, which has been negotiated, shall avoid its payment because the property has been stolen, the maker has been cheated or swindled out of it, or it has been lost or destroyed. There would be as much reason in the one case as in the other.

Perceiving no error in the record, the decree of the court below is affirmed.

*Decree affirmed.*