(No. 28504.—

THE NEWBERRY LIBRARY *et al.,* Appellants, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellee.

*Opinion filed March 21, 1945.*

Poppenhusen, Johnston, Thompson & Raymond; Mayer, Meyer, Austrian & Platt; Winston, Strawn & Shaw; Scott, MacLeish & Falk; Pam, Hurd & Reichmann, and Chapman & Cutler, (Floyd E. Thompson, of counsel,) all of Chicago, for appellants.

Richard S. Folsom, and Kirkland, Fleming, Green, Martin & Ellis, (Joseph B. Fleming, and Thomas B. Martineau, of counsel,) all of Chicago, for appellee.

Mr. Justice Smith delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county. The suit was brought by appellants, as plaintiffs, against the board of education of the city of Chicago, appellee. The purpose of the suit was to recover the amount represented by interest coupons attached to certain refunding bonds issued by the board of education.

The complaint is in two counts. The first count is based on interest coupons attached to an issue of refunding bonds issued by the board of education as of September 1, 1934. The second count is based on the interest coupons attached to an issue of refunding bonds issued by the board as of February 1, 1935. The facts are not in dispute. Proof was made under the first count. The facts were stipulated under the second count. The trial

court entered judgment in favor of the defendant in bar of the action. The case is here on direct appeal, constitutional questions being involved.

The record discloses that in the years 1928 and 1929, the board of education issued and sold certain tax anticipation warrants, anticipating the collection of taxes levied in those years. On December 11, 1931, the board, acting under an act of the General Assembly of June 28, 1930, (Laws of 1930, 1st Special Session, p. 93,) issued the bonds of the district for the payment of such outstanding tax anticipation warrants. In *Berman* v. *Board of Education,* 360 Ill. 535, we held a similar act which was approved on July 10, 1933, (Laws of 1933, p. 1012,) invalid, on the ground that it attempted to authorize the board to use the corporate funds of the district for a noncorporate purpose, in violation of section 9 of article IX of the constitution.

By an act approved on February 28, 1934, (Laws 1933-1934, 1st, 2d, and 3d Special Sessions, p. 246,) the legislature attempted to authorize school districts having a population exceeding 500,000 inhabitants to issue refunding bonds, with the consent of the city council expressed by ordinance, for the purpose of paying and discharging "outstanding bonds which are binding and subsisting legal obligations" of the district, without a referendum vote. Acting under this statute, the board of education, as of September 1, 1934, issued its bonds for the purpose of refunding certain outstanding bonds in the sum of $5,500,000. Included in the bonds refunded were bonds Nos. 1 to 500, in the aggregate amount of $500,000. The proof shows that bonds Nos. 1 to 500, being one eleventh, or $500,000 of the total issue of the refunded bonds, were issued in 1931, for the purpose of paying and discharging outstanding tax anticipation warrants. One eleventh of the interest represented by the coupons attached to these refunding bonds constitutes the subject matter of the first

count of the complaint. In *People ex rel. Toman* v. *Granada Apartment Hotel Corp.* 381 Ill. 41, it was stipulated by the parties in that case that the bonds issued in 1931, for the payment of tax anticipation warrants, and one eleventh of the refunding bonds issued September 1, 1934, in the amount of $5,500,000, for the purpose of refunding the bonds issued in 1931, were invalid. They were so treated in that case by this court.

It is stipulated in the record that as of February 1, 1935, the board of education also issued refunding bonds under said act of February 28, 1934, in the amount of $900,000. The stipulated facts show that these bonds were all issued for the purpose of refunding bonds theretofore issued for the payment of tax anticipation warrants. It is the coupons attached to these bonds which are involved under the second count of the complaint. It was also stipulated in the *Granada Hotel case* by the parties to that case that this issue of refunding bonds was invalid and they were so treated in that case. Appellants here, however, were not parties to that case. They are not bound by any stipulation in that record or by the decision in that case.

The record shows that the two issues of refunding bonds here involved, after they had been approved by an opinion of the attorneys designated by the purchasers, were purchased by a syndicate of banks. The banks in turn sold the bonds in the open market to their customers. Some of the present holders of the bonds, at the time they purchased the same, were furnished with copies of the opinion of the attorneys approving the proceedings of the board and the bonds issued. Interest was paid on the whole issue of $5,500,000 of refunding bonds, issued as of September 1, 1934, until the due date of the second installment of interest in 1943. When the coupons on the whole issue of $5,500,000, were presented for payment in 1943, being coupons No. 17, the board paid ten elevenths of the amount of the coupons and refused to

pay one-eleventh part of each coupon. It based its refusal on the fact that, included in the bonds refunded by that issue, there was an item of $500,000 of refunded bonds which were issued to pay tax anticipation warrants. Hence, it declined to pay interest on the one-eleventh part of such issue. As to the $900,000 of refunding bonds issued February 1, 1935, it refused to pay any part of the second installment of interest due in 1943, represented by coupon No. 16. This refusal was based on the ground that all of said bonds were issued for the purpose of refunding bonds in a like amount which were issued for the payment of tax anticipation warrants.

This suit was then brought to recover the unpaid one-eleventh part of the second installment of interest due in 1943, on the issue of $5,500,000 refunding bonds issued as of September 1, 1934, and also to recover the full amount of the interest coupons for the second installment, due in 1943, on the $900,000 refunding bonds which were issued on February 1, 1935. The issue involved is the liability of the board of education for the payment of those interest coupons. While only the coupons are here directly involved, the liability of the board of education to pay such coupons depends upon its liability to pay the bonds to which the coupons were attached.

In view of our decisions in *People ex rel. Reconstruction Finance Corp* v. *Board of Education,* 386 Ill. 522; *Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508; *Leviton* v. *Board of Education,* 385 Ill. 599; *People ex rel. Toman* v. *Granada Apartment Hotel Corp.* 381 Ill. 41, and *Berman* v. *Board of Education,* 360 Ill. 535, the question of the invalidity of the bonds involved cannot be regarded as an open question. While it is true that appellants were not parties to those cases and are not bound by them in the sense that they are *res judicata,* those decisions, until overruled, are the law of this State and binding upon this court. In those cases we definitely

held that tax anticipation warrants are not liabilities of the municipality or school district by which they are issued. They are not, and cannot be, corporate obligations under section 9 of article IX of the constitution. Those cases further hold that the changing of tax anticipation warrants into bonds issued for their payment does not make them corporate liabilities. They also hold that issuance of bonds for the purpose of refunding bonds which were issued for the purpose of paying tax anticipation warrants does not change the character of the liability. They further hold that even a judgment entered on tax anticipation warrants cannot be paid with the corporate funds of the school district. If the supposed liability has its inception in a tax anticipation warrant, such liability is still based upon such warrant in whatever form the claim may thereafter assume. The invalidity of the original claim cannot be avoided by simply changing the form in which it is presented in an effort to conceal its identity.

Realizing the force of these decisions, appellants do not contend that the bonds here involved are legal liabilities of the school district. Their contention is that inasmuch as the board of education of the city of Chicago is an independent corporate body in which the statute has vested the power to issue bonds, it also has the power to determine when the conditions exist which authorize it to exercise the authority granted and to issue bonds. Otherwise stated, the contention is that where there is lawful power to issue bonds under some state of facts, the board has the power to determine the existence of the necessary precedent facts and is estopped, as against *bona fide* holders of its bonds, to deny the existence of such precedent facts, represented by it to exist. Specifically, it is contended that the act of February 28, 1934, authorized the board of education to issue refunding bonds to pay and discharge outstanding bonds which were binding and subsisting legal obligations of the district, and that, in consequence of

this grant of power, the board had the right to determine that the conditions precedent to the exercise of the power existed; that having found that the refunded bonds were "binding and subsisting legal obligations" of the district, and having issued the bonds here involved for the payment of such obligations, the board is estopped, as to *bona fide* holders, from denying that the bonds refunded were "binding and subsisting legal obligations" of the district.

In support of this contention, appellants rely upon a recital contained in the bonds themselves. This recital is as follows: "It is hereby certified and recited that this bond is authorized by and is issued in conformity with all requirements of the Constitution and laws of the State of Illinois; that all acts, conditions and things required to be done precedent to and in the issue of this bond and precedent to and in the issuance of the bonds hereby refunded have been properly done, happened and been performed in regular and due form and time as required by law. That the indebtedness represented by the bonds hereby refunded was a valid and legal obligation of said Board of Education of the City of Chicago and that the total indebtedness of said Board of Education of the City of Chicago including this bond did not at the time of the issuance of the bonds hereby refunded and does not now exceed any constitutional or statutory limitations, and that provision has been made for the collection of a direct annual tax upon all the taxable property in said School District sufficient to pay the interest hereon and the principal hereof when the same matures." It is insisted that, by this recital, the board is estopped from asserting that the bonds refunded were not valid and legal obligations of the board of education.

In support of their able and plausible argument on the application of the doctrine of estoppel, appellants cite and rely upon many Federal decisions and also the decisions of a number of the courts of foreign jurisdictions. A

careful examination and analysis of the cases cited in connection with the particular facts involved in each case demonstrates, however, that they do not carry the doctrine of estoppel to the extent to which appellants would apply it. While many of the cases cited contain language which supports the rule contended for, still in those cases in which the question was directly involved upon the facts, the rule under which the doctrine has been applied is limited and confined within a much smaller scope than that contended for by appellants. A reference to only a few Federal cases will suffice to demonstrate such limitations, as expressed by those courts.

In *Katzenberger* v. *City of Aberdeen,* 121 U. S. 172, 30 L. ed. 911, it was said: "But it is insisted that the city is estopped by the recital in the bonds from denying that they were lawfully issued. The recital is in effect that they were issued 'under and pursuant' to law, the charter of the city, and the ordinance of April 26, 1870. As has been seen, neither the charter nor any other law of the State conferred in express terms power on the city to issue these bonds under any condition of facts. The ordinance of the mayor and selectmen directing their issue is not of itself enough. Legislative authority, express or implied, to pass the ordinance must be shown. The recital, therefore, in its present form, is of matter of law only, because it implies the existence of no special facts affecting the case, except the issue of the bonds under the ordinance to pay the subscription to the stock without any vote of the electors to be taxed therefor. It is in effect nothing more than a recital that bonds issued under such circumstances were 'under and pursuant' to law and the charter of the city. Such a recital does not estop the city from asserting the contrary. To hold otherwise would be to invest a municipal corporation with full legislative power and make it superior to the laws by which it was created."

In *Board of County Comrs.* v. *Graham,* 130 U. S. 674, 32 L. ed. 1065, the bonds contained a recital quite similar to that contained in the bonds in this case. It was there said: "Recurring, then, to a consideration of the recitals in the bonds, we assume, for the purposes of this argument, that they are in legal effect equivalent to a representation, or warranty, or certificate on the part of the county officers, that everything necessary by law to be done has been done, and every fact necessary by law to have existed did exist, to make the bonds lawful and binding. Of course, this does not extend to or cover matters of law. All parties are equally bound to know the law; and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law when, judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law. Otherwise it would always be in the power of a municipal body to which power was denied to usurp the forbidden authority, by declaring that its assumption was within the law. This would be the clear exercise of legislative power, and would suppose such corporate bodies to be superior to the law itself."

In *Sutliff* v. *Board of County Comrs.* 147 U. S. 230, 37 L. ed. 145, the rule was stated as follows: "Upon these facts, in the light of the previous decisions of this court, it is clear that the plaintiff, although a purchaser for value and before maturity of the bonds, was charged with the duty of examining the record of indebtedness provided for in the statute of Colorado, in order to ascertain whether the bonds increased the indebtedness of the county beyond the constitutional limit; and that the recitals in the bonds did not estop the county to prove by the records of the assessment and the indebtedness that the bonds were issued in violation of the constitution. In those cases in which this court has held a municipal corporation to be estopped by recitals in its bonds to assert that they were issued in

excess of the limit imposed by the constitution or statutes of the state, the statutes, as construed by the court, left it to the officers issuing the bonds to determine whether the facts existed which constituted the statutory or constitutional condition precedent, and did not require those facts to be made a matter of public record."

In *Shelby County* v. *Provident Savings Bank & Trust Co.* 54 Fed. 2d 602, the Circuit Court of Appeals for the Fifth Circuit, after reviewing many cases on the subject, said: "This being so, purchasers of the bonds could not rely on recitals inconsistent with what they knew or were chargeable with knowing. No action of the Legislature could have the effect of enabling a county, by representations or recitals, to estop itself to deny the validity of what by constitutional provisions the Legislature was forbidden to authorize the county to do."

It will thus be seen that the rule as announced by the Federal courts is that the doctrine of estoppel may not be invoked where there is a lack of constitutional authority to issue the bonds involved. Nevertheless, whatever might be the rule in the Federal courts, it is not binding on this court. It is settled that the State law and the decisions of the State courts control as to questions concerning the validity of bonds issued by a municipality, as well as in other cases arising under the constitution and statutes of a State. *Huddleston* v. *Dwyer,* 322 U. S. 232, 88 L. ed. 933, 64 S. Ct. 1015; *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64, 82 L. ed. 1188, 58 S. Ct. 817.

Appellant contends that there is a distinction between the effect of recitals in case of bonds of original issue and those contained in refunding bonds as affecting the right to defend against payment of refunding bonds because the bonds refunded might be void. We think the facts in this case are sufficient to render a consideration of this point unnecessary. Here the statute vested the school board with authority to issue refunding bonds for the purpose of re-

funding "outstanding bonds which are binding and subsisting legal obligations" of the district. The refunding bonds recited on their face that they were issued for the purpose of refunding "outstanding bonds which are binding and subsisting legal obligations." This created a specific condition that the bonds refunded were "legal obligations," which required something more than a mere investigation of the power to issue the refunding bonds. Because of this fact it is unnecessary to analyze the difference, if any, of principles recited under this point, since the legality of the original issue of bonds is necessary in order that they may be lawfully refunded.

While it is true, as contended by appellants, this court has never directly passed upon the specific question here involved, yet we believe this court has, in a great many cases, announced principles and reached conclusions which are controlling and decisive of this case. These decisions state the rule clearly recognized by the Federal courts in the above cases.

In *School Directors* v. *Fogleman*, 76 Ill. 189, the validity of certain school orders was involved. The orders purported on their face to be issued for the purpose of building a school house. The school directors had no authority to build a school house unless authorized by the voters of the district. The defense was made that no referendum election was held and, consequently, the school board had no power to issue orders for the purpose of building a school house. It was there said: "It is also urged by appellee that the school house was accepted by the directors who incurred the debt, and that school was kept in it. That does not legalize the act, or bind the taxpayers. The question here presented is a question of power, and no act of the kind set up can make it valid for any purpose. Nor can the beneficiary in this case resort to such acts in support of his claim. In the absence of power to do the act, there can be no innocent holder of this paper. He

should have looked to the authority to make the contract in satisfaction of which the orders are drawn."

In the case of *Lippincott* v. *Town of Pana*, 92 Ill. 24, the question involved was the validity of an election under which the right to issue the bonds involved was asserted. It was there said: "It is the long established rule of this court, that where there is an entire absence of power as distinguished from a defective execution of a power, then the recitals of those invested with the ministerial duty of issuing municipal bonds will afford no protection to even *bona fide* holders for value of such bonds. *Force* v. *Town of Batavia*, 61 Ill. 100; *Williams* v. *Town of Roberts*, 88 Ill. 13, and authorities there cited."

In *Gaddis* v. *Richland County*, 92 Ill. 119, a like question was involved and the same rule stated: "It is however urged, that the bonds were negotiated before due, to innocent persons, without notice, and they should be protected. As a general rule no person can acquire rights under a void instrument. Such is the case with forged paper, and paper issued without authority. Then, as these bonds were issued without authority, and void, the purchaser acquired no rights under them."

In *Hewitt* v. *Board of Education of Normal School Dist.* 94 Ill. 528, the validity of a school bond was involved. The defense was made that the school board had no authority to issue the bond. It was there said: "Where a corporation is created for business purposes, all persons may presume such bodies, when issuing their paper, are acting within the scope of their power. Not so with municipalities. Being created for governmental purposes, the borrowing of money, the purchase of property on time, and the giving of commercial paper, are not inherent, or even powers usually conferred; and unless endowed with such power in their charters, they have no authority to make and place on the market such paper, and persons dealing in it must see that the power exists. This has long

been the rule of this court. *Board of Supervisors* v. *Farwell,* 25 Ill. 181; *Clark* v. *Hancock County,* 27 id. 305; *Marshall County* v. *Cook,* 38 id. 44; *Wiley* v. *Silliman,* 62 id. 170; *Harding* v. *Rockford, Rock Island and St. Louis Railroad Co.* 65 id. 90; *McWhorter* v. *The People,* id. 290; *Town of Big Grove* v. *Wells,* id. 263."

The rule announced in that case was quoted with approval in *Coquard* v. *Village of Oquawka,* 192 Ill. 355, where it was further said: "The question is not one of mere irregularity, but of power, and consequently it is immaterial to the decision of the case what was the consideration of the bonds or what the status of the holder, for it must be conceded that municipal corporations, organized, as they are, for restricted governmental purposes, have no power to issue commercial paper unless such power has been conferred by statute, and without such power such paper is void, even in the hands of an innocent holder for value before maturity."

In *Ohio Nat. Life Ins. Co.* v. *Board of Education,* 387 Ill. 159, we said: "One dealing with a municipal corporation is chargeable with notice of its powers and limitations and if he purchases bonds the proceeds of which are to be applied to a purpose prohibited by statute, he cannot, when the bonds have been declared illegal, sustain an action for money had and received."

In *Northern Trust Co.* v. *Village of Wilmette,* 220 Ill. 417, the following language was used: "In the case of *Hewitt* v. *Board of Education of Normal School Dist.* 94 Ill. 528, we held that municipal corporations, unless authorized by their charters or by statute, have no power to make and place in the market commercial paper, and all persons dealing in municipal bonds issued by officers of a school district must see that the power to issue them exists; that there is no presumption that such paper has been issued within the scope of their power, as is the case with corporations created for business purposes, and that

municipal bonds issued without power are void in whosoever's hands they may be found."

In *Williams* v. *Town of Roberts*, 88 Ill. 11, it was held that whoever deals in municipal bonds is chargeable with knowledge whether the precedent conditions to the existence of the power of issuing the bonds have been complied with. In commenting on the contrary decisions of the Supreme Court of the United States, the court in that case said: "We are aware that a rule, differing in material respects from that followed by this court in regard to the extent to which *bona fide* holders of municipal bonds shall be protected by the recitals of those invested with the ministerial duty of issuing such bonds, is held by the Supreme Court of the United States. But, much as we respect the ability and learning of the members of that court by whom that rule is maintained, we have never been convinced that it is preferable to that we have adhered to."

Numerous Illinois cases cited by appellants like *Maxcy* v. *County Court of Williamson County*, 72 Ill. 207; *Burr* v. *City of Carbondale*, 76 Ill. 455, and other similar cases, where the question involved was as to an irregular exercise of a granted power and not the existence of the power itself, are not in conflict with the rule announced in the cases above cited.

The rule of the doctrine of estoppel is clarified and clearly stated in a note to *Emunds* v. *City of Glasgow*, 86 A. L. R. 1063, as follows: "The estoppel of a municipal or quasi municipal corporation to deny the validity of bonds issued by it, if based upon recitals in the bonds, is limited to recitals as to matters of fact, and these facts must be such as the officers authorized to issue the bonds have the express or implied authority to ascertain. Moreover, these facts, which the corporation is not permitted against a bona fide holder to question in face of a recital in the bonds of their existence, are those connected with or growing out of the discharge of the ordinary duties

of such of its officers as are invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued; * * *. Purchasers of municipal bonds are charged with notice of the laws of the state granting the power to issue bonds they find on the market. If the power exists in the corporation, the bona fide holder is protected against mere irregularities in the manner of its execution; but if there is a total lack of power no legal liability can be created by recitals in the bonds of the existence of such power. The corporation cannot be estopped to show that it was without legislative authority to issue the bonds. The question of legislative constitutional authority cannot be concluded by recitals of the existence thereof."

The rule is there supported by a long list of citations from the Supreme Court of the United States and other Federal courts, as well as from Illinois and many other jurisdictions.

In 44 Corpus Juris, p. 1248, section 4244, it is stated, upon the authority of numerous cases cited, "Recitals in municipal bonds are, however, binding only in respect of matters of fact, which it may be fairly presumed that the officers of the municipality were left to determine, and not in respect of matters of law of which all are bound to take cognizance, and even as to matters of fact the municipality is not estopped if the facts recited are matters of public record open to the inspection of every inquirer, or the constitution or the law under which the bonds are issued prescribes some public record as the test of the existence of the facts or circumstances recited, and such record is in fact made as required by law."

The same rule is announced in 43 Am. Jur. p. 442, sec. 220, as follows: "In order to invoke the doctrine of estoppel by recitals, it is settled that the recitals must be proper in their substance, covering and relating to mat-

ters of fact. Recitals of matters of law or conclusions of law do not operate in favor of the public body as estoppels. A recital of the actual facts with a statement that thereby the bonds were conformable to the law, when, judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the subdivision to claim the protection of the law."

The rule deducible from the above authorities is that recitals contained in bonds issued by a municipal or *quasi*-municipal corporation, in so far as such recitals relate to the existence of facts, where the authority to determine the existence of such facts is expressly or by necessary implication conferred upon the officers issuing the bonds by the statute conferring the power, are binding upon the municipality. The rule is further that recitals as to questions of law are beyond the powers of the authority issuing the bonds and cannot operate as an estoppel. Where there is an absolute lack of power to issue the bonds, no recitals of either law or fact contained therein can be availed of even by *bona fide* holders.

Turning to the act of February 28, 1934, we find that the power conferred upon the school board to issue refunding bonds was limited to the purpose of refunding outstanding bonds which were binding and subsisting legal obligations of the board of education. The power to determine the legality of the outstanding obligations of the district was not conferred upon the school board, either expressly or by necessary implication. The power to issue refunding bonds was granted only when the district, as a matter of fact, had outstanding bonds which were binding and subsisting legal obligations of the district. Whether the outstanding bonds were binding and subsisting legal obligations of the district was a question of law. That the legislature never contemplated vesting unlimited authority in the board of education to finally determine whether **the outstanding bonds** were binding and subsisting legal

obligations is definitely indicated by section 2 of the act. That section provides that whenever the board of education desires to issue refunding bonds, as authorized by the act, "it shall adopt a resolution designating the purpose and fixing the amount of the refunding bonds proposed to be issued."

In this case such resolutions were adopted. They are public records of the district, open to public inspection. In accordance with the applicable provisions of the statute, these resolutions were presented to the city council of the city of Chicago. They identified specifically the bonds to be refunded. The city council passed ordinances consenting to the issuance of the refunding bonds. The ordinances particularly specified the bonds to be refunded. The resolutions of the board of education were set out at length in the ordinances. These ordinances are also public records, open to public inspection. Anyone examining the resolutions or the ordinances would have been apprised of the fact that the refunding bonds were issued for the payment of the bonds refunded, specifically referred to in the resolutions and the ordinances. By reference to the resolutions of the board of education and the ordinances of the city of Chicago under which the refunded bonds were issued, he would have been apprised of the fact, specifically recited therein, that said bonds were issued for the purpose of paying the principal and interest on tax anticipation warrants, issued by the board of education, to anticipate the collection of taxes levied for the years 1928 and 1929. These were all public records. They contained all the facts in connection with the issuance of the refunding bonds as well as the bonds refunded. He would there have ascertained that the refunded bonds were issued for a noncorporate purpose, in violation of section 9 of article IX of the constitution, and that such bonds were invalid and did not constitute binding and subsisting legal obligations of the board of education. It seems that little:

else could have been done to have apprised prospective purchasers of the invalidity of both the refunded and the refunding bonds.

Under the cases cited, prospective purchasers could not rely upon a recital contained in the bonds as to their legality, nor that the bonds refunded were binding and subsisting legal obligations of the board of education. Whether they were such obligations was a question of law, dependent upon the legality of the purpose for which the refunded bonds were issued. This was not a question of fact, the final determination of which was vested in the board of education by the statute conferring the power to issue the refunding bonds, either expressly or by necessary implication. The recital on the face of the bonds that they were issued to pay outstanding bonds which were binding and subsisting legal obligations of the board of education was wholly ineffective. Such recitals cannot be invoked under the doctrine of estoppel to deny the board of education the right to assert that the refunded bonds, for the payment of which the refunding bonds were issued, were not binding and subsisting legal obligations of the board of education.

The rule contended for by appellants, if adopted, would result in placing in the hands of the board of education the power to circumvent all restrictions of the constitution. All it would have to do to avoid such limitations would be to issue tax anticipation warrants, which are not corporate liabilities, and then unlawfully issue bonds to liquidate such noncorporate liabilities. The board could then issue refunding bonds under the act of February 28, 1934, to pay and refund the bonds unlawfully issued for the payment of the tax anticipation warrants. By reciting in the refunding bonds that the refunded bonds were binding and subsisting legal obligations of the board of education, it would be forever thereafter estopped from challenging such recitals. The result would be that the

board of education, by the application of the doctrine of estoppel, would be vested with powers which the legislature is prohibited by the constitution from conferring upon it. This is exactly the case here presented. Such a result is expressly prohibited by section 9 of article IX of the constitution. The purpose of this wholesome provision of the constitution is the protection of the tax-payers against the unauthorized acts of the board of education, and to limit the use of the money of the taxpayers to corporate purposes. The limitations of the constitution operate and protect the taxpayers in whatever form the claim for the payment of noncorporate liabilities may assume or be presented.

The doctrine of estoppel cannot be invoked in this case. The recital in the refunding bonds that such bonds were "issued in conformity with all requirements of the constitution and laws of the State of Illinois" and that "the indebtedness represented by the bonds hereby refunded was a valid and legal obligation of said Board of Education," cannot prevail against the established facts, shown by the public records made by the board of education in compliance with the statute under which the board was acting in issuing the bonds.

In reaching this conclusion, we are not unmindful of the position in which the purchasers of the refunding bonds now find themselves involved. Nevertheless, this court cannot disregard constitutional restrictions or settled rules of law in the interest of sympathetic inclinations and appeals. Any losses which such purchasers have sustained, or will sustain, are not the fault of either the constitution or the rules of the law announced.

The judgment of the circuit court of Cook county in bar of the action is affirmed.               *Judgment affirmed.*