**LOEB et al. v. BOARD OF EDUCATION OF CITY OF CHICAGO.**

**No. 10620.**

United States Court of Appeals Seventh Circuit.

May 1, 1953.

Frank R. Schneberger, Chicago, Ill. (Frank S. Righeimer, James W. Coffey and John T. Mehigan, Chicago, Ill., of counsel), for appellant.

Karl Edwin Seyfarth, Benton Atwood, Chicago, Ill., Leonard C. Mead, Chicago, Ill., Howard B. Bryant, Chicago, Ill., Jerome F. Dixon, Chicago, Ill., George L. Siegel and James A. Harrington, Chicago, Ill., Seyfarth & Atwood, Chicago, Ill., Frank H. Madden, Chicago, Ill. (Irvin F. Richman, Chicago, Ill., of counsel), for appellees.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

This litigation presents a new approach to a much debated question: The measure of liability of the Board of Education of the City of Chicago arising out of the issuance and sale of warrants drawn in anticipation of school taxes for the year 1929. These warrants have been before this court on two previous occasions. Bd. of Ed. of the City of Chicago v. Norfolk & Western Ry. Co., 7 Cir., 88 F.2d 462 and Fidelity Trust Co. v. Bd. of Ed. of the City of Chicago, 7 Cir., 174 F.2d 642. They have made periodic appearances before the Supreme Court of Illinois. See, e.g., Berman v. Bd. of Ed. of the City of Chicago, 360 Ill. 535, 196 N.E. 464, 99 A.L.R. 1029; Leviton v. Bd. of Ed. of the City of Chicago, 374 Ill. 594, 30 N.E.2d 497; People ex rel. Toman v. Granada Hotel Corp., 381 Ill. 41, 44 N.E.2d 606; Leviton v. Bd. of Ed. of the City of Chicago, 385 Ill. 599, 53 N.E.2d 596; People ex rel. R. F. C. v. Bd. of Ed. of the City of Chicago, 386 Ill. 522, 54 N.E.2d 508; Newberry Library v. Bd. of Ed. of the City of Chicago, 390 Ill. 48, 60 N.E.2d 552; State Life Ins. Soc. v. Bd. of Ed. of the City of Chicago, 394 Ill. 301, 68 N.E.

2d 525; Schreiner v. City of Chicago, 406 Ill. 75, 92 N.E.2d 133. The suits they have prompted in the United States District Court for the Northern District of Illinois and the Superior and Circuit Courts of Cook County, Illinois are legion.

One would presume that, after so many trips through the judicial grist mill, "nary a kernel" of controversy would remain to be ground. But not so, say plaintiffs, who rely upon what they say is a new rationale upon which, they assert, the liability of the Board to pay the warrant holders *in toto* may be premised. Before considering this allegedly new concept, we mention briefly the underlying facts.

On January 21, 1929 the City Council of the City of Chicago, pursuant to a demand by the Board of Education, levied taxes for school purposes in the following amounts: (1) $62,400,000 for educational purposes, (2) $32,500,000 for building purposes. As these taxes could not be collected until the spring of 1930, due to the processes prescribed by the State, the City Council, on the same date, passed two ordinances authorizing issuance and sale of educational and building tax anticipation warrants, which, in pertinent part, read as follows: "* * * the City of Chicago * * * will pay to bearer * * * the sum of five thousand dollars * * * from the proceeds of taxes, when received, * * * heretofore levied upon all the taxable property in the City of Chicago for the year 1929 for educational purposes. This Warrant is issued in anticipation of said taxes so levied for the year 1929 for educational purposes, to provide a fund to meet and defray the ordinary and necessary expenses of the public schools of the City of Chicago, and is payable, both principal and interest, solely from said taxes and not otherwise, which taxes are hereby assigned and pledged to the payment of this warrant and of all warrants issued against and in anticipation of such taxes, the total of which warrants so issued does not exceed seventy-five per cent of the tax levy made therefor, * * * It is hereby certified that all acts, conditions and things required by law to be done precedent to and in the issuance hereof have been properly done,

have happened and have been performed as authorized by an act entitled 'An Act to amend sections 128 to 139 inclusive and section 161 of an Act entitled "An Act to establish and maintain a system of free schools" approved and in force June 12, 1909; * * *' in force April 20, 1917 [Ill.Rev.Stat.1929, c. 122, §§ 151–162, 186] * * *."

Subsequently the Board sold warrants in the sum of $46,800,000 drawn against anticipated educational taxes, and $15,900,000 drawn against anticipated building taxes. This procedure had been based on the premise that all taxable property located within the School District bore an assessed valuation of $4,250,437,799. But, on July 10, 1928, the State Tax Commission had ordered a reassessment of all taxable property located in Cook County. This reassessment was not completed until 1931, when the total assessed valuation of property within the school district was reduced to $3,694,498,706. It was this reduced sum which alone could be and was ultimately employed in the extension of collectible taxes. They totalled: (1) $54,386,937.12 for educational purposes and (2) $18,472,-493.53 for building purposes. And, unfortunately, as is too often true of tax collections, these amounts were not fully realized.

It is unnecessary to recount in exact detail the extent to which the several warrant holders remain unpaid. Suffice to say that they have not been paid in full, despite extended litigation, and legislation enacted on their behalf. An affirmance of the District Court's judgment would put them in apparent reach of their goal, and thus, we suppose, might hasten the end to what appears to be an otherwise interminable contest. But, we are convinced that such a result, desirable though it may be, is not justified and that the judgment must be reversed.

■ Plaintiffs' theory of recovery is based on this clause of the warrants: "the total of which warrants so issued does not exceed seventy-five per cent of the tax levy made therefor, * * *." They urge that this constituted a warranty by the Board that the total amount of warrants issued did

not exceed 75% of the tax levy, and that this warranty was breached to plaintiffs' injury in that the total of the warrants sold did exceed such percentage of the levy. To reach this conclusion they have viewed the total dollar amount of warrants issued against the second levy, that is, the smaller one, for, admittedly, the total issuance was within 75% of the levy ordinance passed by the City Council on January 21, 1929. It appears from the opinion of the District Court that it accepted this theory as the basis for plaintiffs' recovery. We think the judgment erroneous for two reasons: (1) under controlling decisions of the Illinois Supreme Court, this clause has not been recognized as imposing any obligation upon the Board; (2) if it did, the Board had no authority to enter into such an undertaking and hence the contract is ultra vires, void and unenforceable.

■ We are, of course, under the Rules of Decision Act, 28 U.S.C. § 1652, as applied in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, bound by the decisions of the Supreme Court of Illinois in this matter. And to those we turn.

In Berman v. Bd. of Ed. of the City of Chicago, 360 Ill. 535, 196 N.E. 464, 465, 99 A.L.R. 1029, the court had before it legislation which authorized issuance of bonds by the Board, proceeds from the sale of which would be employed to pay the holders of these same warrants. The plan was assailed on the grounds "that the tax anticipation warrants in question were not obligations of the board of education, but, on the contrary, were payable solely out of the taxes anticipated by them, if and when collected, and not otherwise; that the use of the proceeds of the sale of such bonds, * * * would amount to an appropriation of money for the purpose of paying a contract which by its terms is not an obligation of the board of education * * * in direct violation of section 2 of article 2, section 14 of article 2, and section 9 of article 9, of the Constitution of" the State of Illinois, S.H.A. In view of the general rule that courts abhor decisions declaring legislation violative of a constitution, it is only reasonable to conclude that the Illinois Court considered the entire certificate, including all provisions evidencing any indebtedness of the Board. In sustaining the objections to the proposed bond issue the court said: "When the warrant is issued and accepted or sold the transaction is *closed* on the part of the municipality, *leaving no future obligation upon it, either absolute or contingent, whereby its debt may be increased. * * *"* (Emphasis added.)

In Schreiner v. City of Chicago, 406 Ill. 75, 92 N.E.2d 133, 137, the court again had occasion to consider these instruments. There it said: "* * * it [is] clear that such warrants do not constitute an obligation between the taxing body and the purchaser or holder thereof. * * * a tax anticipation warrant when issued and accepted or sold, closed the transaction upon the part of the municipality, leaving *no future obligation upon it, either absolute or contingent* * * *. '* * * tax anticipation warrants are *not contracts* and the municipality is not indebted as a result of their issuance.'" (Emphasis added.) Language of equally broad import is contained in Newberry Library v. Bd. of Ed. of the City of Chicago, 390 Ill. 48, 60 N.E. 2d 552, where again these same warrants were under scrutiny.

The earlier case of Fuller v. Heath, 89 Ill. 296, is also instructive. There the validity of anticipation warrants was challenged on the ground that by issuing them the municipality had increased its indebtedness beyond the constitutional limitation. The warrants stated that they did "not exceed 85 per cent of the appropriation made therefor." The court spoke as follows: "* * * It is strenuously urged that these warrants are *contracts* of the city, * *. * * * The warrant is drawn upon and payable *only* out of a particular fund or appropriation, and *on its face* does not purport to *impose upon the city any liability.*"

The effect of plaintiffs' theory, if we adopted it, would be to disregard these authoritative decisions holding that such warrants are not "contracts" and create "no future obligation * * * either absolute or contingent." Certainly we would be remiss in our duty to apply the substantive

law of Illinois, as we find it, should we yield to plaintiffs' argument.

Plaintiffs argue that the particular clause upon which they premise their claim was not presented to the Illinois Court with the same vigor as it has been advanced here. This may be true (although apparently not so in the Fuller case), but that is not to say that the court did not consider the essential effect of the certificates when it spoke in such sweeping terms. Thus in the Berman case, the court had before it all of the facts surrounding the issuance of the warrants that we have here and yet declared the floating of a bond issue unconstitutional because the warrants placed "no future obligation upon [the Board] either absolute or contingent". The only fair conclusion is that these decisions are interpretative of the entire instrument, and that by its decisions the Illinois Supreme Court has foreclosed our consideration of plaintiffs' rationale.

Furthermore, we think it follows indisputably that the Illinois Court would also hold that the Board had no authority to make such a covenant, and, consequently, would refuse to enforce it as being ultra vires and void. The statute pursuant to which these warrants were issued, Cahill's Ill.Rev.Stat.1929, ch. 122, par. 156, Ill.Rev. Stat.1929, c. 122, § 155, reads, in essential parts, as follows: "* * * when there is not sufficient money in the treasury to meet the ordinary and necessary expenses for educational and for building purposes, [the Board may] request the city council, whose duty thereupon it shall be, to order issued warrants against and in anticipation of any taxes levied for the payment of the expenditures for educational and for building purposes to the extent of seventy-five per cent of the total amount of the taxes levied for such purposes: Provided, however, that warrants drawn and issued under the provisions of this section shall show upon their face that they are payable *solely* from said taxes when collected, and not otherwise, * * *." The warrants in question showed on their face that they were issued pursuant to this statute. This being the case, the issuing municipality was restricted in its actions to the exercise of powers vested in it by the legislation. Law v. People, 87 Ill. 385; School Directors v. Fogleman, 76 Ill. 189. It is difficult to conceive of language more explicit than "they are payable solely from said taxes * * * and not otherwise." The Illinois Court in People ex rel. R. F. C. v. Bd. of Ed. of the City of Chicago, 386 Ill. 522, 54 N.E.2d 508 and Schreiner v. City of Chicago, 406 Ill. 75, 92 N.E.2d 133, substituted "only" for "solely", but the connotation of the two words is the same.

This statutory language, we think, instructs the Board of Education that it may borrow funds in anticipation of taxes but that the only security available to the lenders will be anticipated taxes when collected, and by necessary implication, that no other security of any nature shall be given; no other obligation of any kind undertaken. It seems to us an inescapable conclusion that the Board had no power to covenant as urged. Therefore, assuming, *arguendo*, that it did so covenant, the undertaking was clearly in excess of the powers conferred upon it by the statute and consequently void and unenforceable.

The judgment is reversed.