(No. 31300.—▮▮▮▮▮▮)

EDITH M. SCHREINER, Appellant, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

76

WARREN H. ORR, THOMAS TIGHE, and CHARLES LIEB-MAN, all of Chicago, for appellant.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, and FRANK R. SCHNEBERGER, both of Chicago, (JOSEPH F. GROSSMAN, and PHILIP H. CORBOY, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Edith M. Schreiner brought her suit in equity in the superior court of Cook County on behalf of herself and all other persons like situated, as holders of anticipation warrants drawn against the educational fund school tax of the city of Chicago for the year 1929. The suit is brought against the city of Chicago, a municipal corporation, and the board of education of the city of Chicago, a municipal corporation, but judgment prayed only against the city. The plaintiff was the owner of an anticipation warrant which she alleges has never been paid because of the action of the city in diverting money derived from the 1929 educational tax levy to an improper purpose, whereby

she and others like situated were prevented from collecting the principal or interest on said warrants. A separate motion to strike was made by each defendant and sustained by the court, and the plaintiff's cause dismissed for want of equity. Plaintiff appeals directly to this court, and a motion to transfer has been made by the appellees.

It appears from the amended complaint, more fully set out hereafter, that the plaintiff directly charges that both defendants violated the constitution of the State of Illinois and the constitution of the United States in that said defendants used money, which should have been applied to the payment of plaintiff's tax warrant, and diverted it to other improper purposes, whereby the plaintiff has been deprived of her property without due process of law, and her money has been taken for public use without compensation, and that the actions of the defendants impaired the obligation of a contract existing between the plaintiff and the defendant board of education.

Inasmuch as the case was decided in the superior court upon a motion to strike, which admits all matters well pleaded, it becomes incumbent upon some court to determine whether there has been a violation of the constitution, or whether it is necessary to construe the constitution. In either event it is beyond the power of the Appellate Court to do this. It is not suggested that these particular points of constitutional law have been well settled or determined by previous decisions, and it is a rule that unless the question has been previously decided, a constitutional question must be decided by the Supreme Court. (Ill. Rev. Stat. 1949, chap. 110, par. 199.) Like questions were raised in *Berwind, Inc.* v. *Chicago Park District,* 393 Ill. 317, but not directly passed upon. It is not necessary for us to determine, in the first instance, that appellant is right in her construction of the constitution, but only, whether a constitutional question is presented. If so, it is our duty to take the case on direct appeal, although we may decide

against the appellant on her constitutional points. (*Kowal-czyk* v. *Swift & Co.* 317 Ill. 312.) Under the allegations of the complaint and the legal admissions made by a motion to strike, we are of the opinion that we have jurisdiction on direct appeal.

In view of the fact that the decree of the trial court was rendered upon motions to strike, it becomes necessary to set out in some detail the facts set out in the complaint. After the formal averments that plaintiff is the owner of certain tax anticipation warrants, and that there are other persons who own like warrants drawn against the same tax, who have not been paid, and the description of the corporate character of the two defendants, it alleges substantially as follows: That on December 6, 1928, pursuant to the requisite ordinances and resolutions, the city of Chicago, out of its surplus funds, purchased $2,000,000 of tax anticipation warrants drawn against the educational tax levy for the year 1928, said warrants being in the amount of $250,000 each, and numbered 124 to 131 inclusive. In like manner the complaint charges that on December 20, 1928, $2,000,000 more in warrants, *viz.,* Nos. 132 to 139, inclusive, were purchased by the city, and on December 29, 1928, warrant No. 140 for $250,000, and on January 11, 1929, another warrant, No. 141, was also purchased, making a total purchase by the city of Chicago of anticipation warrants drawn against the 1928 school tax levy of $4,500,000. It is then alleged that no money was collected from the 1928 school taxes to apply upon said tax warrants until May 9, 1930; that in January, 1929, the appropriate ordinances and resolutions were enacted by the city, and passed by the board of education of the city of Chicago, to issue anticipation warrants against the educational taxes levied for the year 1929, to the extent of 75 per cent of the amount of such levy, and that in pursuance thereof there was sold by the board of education of the city of Chicago to the public, and to the

city of Chicago, tax warrants drawn in anticipation of said 1929 educational taxes to the extent of $46,800,000; that on January 25, 1929, the city of Chicago purchased $1,700,000 of the 1929 educational tax warrants, Nos. 1 to 6 being in the amount of $250,000 each, and No. 7 in the amount of $200,000; and that in like manner, on February 8, 1929, the city of Chicago purchased warrants Nos. 8 to 14, inclusive, each for $250,000, aggregating $1,750,000, and that on the same date the educational income account received the additional sum of $4,500,000 from the sale of warrants Nos. 20 to 37, inclusive, each in the sum of $250,000, and that the total credits to the educational income account from the sales of 1929 educational anticipation warrants of the city of Chicago, as above itemized, amounted to $7,950,000.

It is next charged that on February 8, 1929, the city of Chicago received from the educational fund $4,500,000, and thereupon delivered to the board of education said 1928 anticipation warrants Nos. 124 to 141, inclusive, aggregating $4,500,000, and also, on the same date, the city received the accrued interest thereon amounting to $26,854.98. From the foregoing matters appearing from the books of account of the board of education it is charged that the payment of the 1928 warrants was made from the proceeds of the sale of the 1929 warrants, and was unlawful and constituted a diversion of money, and that the city of Chicago, by reason of its legal connection with the school system of the city of Chicago, was an express trustee, charged with the duty of seeing that the money obtained from the sale of the 1929 tax anticipation warrants was applied to the purpose for which the tax was levied, and that by its failure to do so a breach of trust was created by the diversion of such funds, which renders it liable to the unpaid holders of the 1929 educational tax warrants.

It is further alleged that tax warrants Nos. 1 to 6, inclusive, Nos. 8, 9, 13 and 14, and Nos. 20 to 24, inclusive,

drawn against the 1929 educational taxes, and aggregating $4,500,000, were paid out of the 1929 tax levy on divers dates between May 5, 1931, and May 29, 1931, together with $509,970.64 accrued interest. But, it is then alleged in the alternative, that the amounts last above mentioned were illegally received by the city of Chicago because it was the owner of 1928 warrants, and was custodian of the funds received from the 1929 warrants, and was a fiscal agent of the board of education, and that said warrants were not in fact paid, but a book entry made and the account of the board of education charged with the sum required to pay the 1928 warrants above described, and that said last numbered 1929 warrants were issued by the board of education in exchange for the 1928 warrants, which brought about their redemption.

The charge is then made that this last sum of money so paid to the city of Chicago was illegal, and should be restored to the educational tax fund, and that, if said fund is restored, it, together with interest, would be sufficient to pay the warrants of the plaintiff and all of the other unpaid holders of 1929 tax anticipation warrants; that the payment of tax warrants Nos. 1 to 6, Nos. 8 to 14, and Nos. 20 to 24, all inclusive, drawn against the taxes of 1929 constituted a taking of the plaintiff's private property, and the private property of other warrant holders, for public use without compensation, contrary to section 13 of article 2 of the constitution of the State of Illinois; and that it also constituted an impairment of the obligations of a contract, in that the 1929 tax money was used contrary to the provisions of the ordinances and resolutions under which they were issued, and other constitutional grounds are alleged, and then follows a prayer for relief.

To the amended complaint motions to strike were made, raising a number of questions that go to the very heart of the case, and which will be condensed for the sake of brevity. We take the objections from the motion of the

city of Chicago, since no relief is prayed in the complaint against the board of education, although both sets of objections raise substantially the same questions. The gist of the objections of the city to the amended complaint is as follows: (1) There never was any trust relationship between the city of Chicago, as a city, and the board of education, or as to its funds, and, even though a constructive trust relationship could be inferred, there is no allegation of diversion of tax collections to an improper purpose. (2) That the plaintiff and those in the same position have recourse only to tax collections for the payment of their warrants, and have no claim whatsoever to the proceeds of the warrants purchased and paid for by the plaintiff. In other words the plaintiff has no right to claim that what she paid for a tax warrant is a fund upon which a trust is impressed for the payment of such warrant. (3) That the acts complained of, if actionable, were solely those of the board of education of the city of Chicago, which, as a *quasi* municipal corporation, is immune from liability.

Before considering these different grounds of objection to the complaint it would be advisable to consider the general principles of law which have been applied, and are applicable to the facts which appear to exist in the present case, and therefore we will briefly analyze the statutory law and decisions that have been applied to the following situation: (a) to tax anticipation warrants and rights and obligations arising therefrom; (b) the relationship between the city of Chicago and the board of education of the city of Chicago, and under the statute which makes their territory coterminous; (c) reference to what funds are available to the holders of tax anticipation warrants, with particular reference as to whether the tax money collected is the sole source of payment, or whether, in addition to the taxes collected, the money paid by the purchaser of the anticipation warrant is impressed with any kind of a trust, whereby it becomes liable for the redemption of the antici-

pation warrant. With the principles applying to these circumstances thoroughly understood, the determination of whether the complaint states a cause of action will be greatly simplified.

The rights arising out of tax anticipation warrants have been before this court many times. In *Fuller* v. *Heath,* 89 Ill. 296, we held that the purchaser of tax anticipation warrants must rely solely upon the ability and fidelity of the revenue officers in the collection and payment of the money mentioned in the warrants; and likewise this court has held that it was the intention of the legislature, in providing for the issuance of tax anticipation warrants, to make it clear that such warrants do not constitute an obligation between the taxing body and the purchaser or holder thereof. (*City of Springfield* v. *Edwards,* 84 Ill. 626; *Coles County* v. *Goehring,* 209 Ill. 142.) In *Law* v. *People ex rel. Huck,* 87 Ill. 385, we held that the legal effect of taking a tax anticipation warrant was to discharge the municipal corporation from all liability on account of the services or obligations for which it was drawn; and, further, that a tax anticipation warrant when issued and accepted or sold, closed the transaction upon the part of the municipality, leaving no future obligation upon it, either absolute or contingent, whereby the debt may be increased. (*Booth* v. *Opel,* 244 Ill. 317.) And, in the case of *Berman* v. *Board of Education,* 360 Ill. 535, where the legislature authorized a school district to issue bonds to pay anticipation warrants, we held that the act was invalid, because it was creating a debt by way of bond for something that was in fact not a debt, saying: "The holders of tax anticipation warrants must look to the specific fund set apart for the payment of their warrants, as * * * tax anticipation warrants are not contracts and the municipality is not indebted as a result of their issuance."

Later, in the case of *People ex rel. Toman,* v. *Chicago and Northwestern Railway Co.* 377 Ill. 547, we said that

a tax anticipation warrant creates no debt. They are in substance an assignment of a portion of the taxes. (*Law* v. *People,* 87 Ill. 385; *Leviton* v. *Board of Education,* 374 Ill. 594.) The sale of anticipation warrants, however, creates an obligation upon the part of the collecting officers to apply the *taxes when collected* to the payment of tax anticipation warrants. (*Berwind, Inc.* v. *Chicago Park District,* 393 Ill. 317.) As though these authorities were not sufficient to define the rights arising out of the anticipation warrants, the statute expressly sets forth the formalities and conditions under which tax anticaption warrants may be issued by the board of education in cities of more than one hundred thousand inhabitants, as follows: "and when there is not sufficient money in the treasury to meet the ordinary and necessary expenses for educational and for building purposes, to request the city council, whose duty thereupon it shall be, to order issued warrants against and in anticipation of any taxes levied for the payment of the expenditures for educational and for building purposes to the extent of seventy-five per cent of the total amount of the taxes levied for such purposes: *Provided, however,* that warrants drawn and issued under the provisions of this section shall show upon their face that they are payable solely from said tax when collected, and not otherwise, and shall be received by any collector of taxes in payment of taxes against which they are issued. * * *" (Ill. Rev. Stat. 1927, chap. 122, sec. 132, par. 156.) From these well-settled rules the right of a holder of tax anticipation warrants is clearly defined, and he must look to the tax collections only, since the statute provides such warrants shall not be paid otherwise.

We next examine the relation between the school board and the city under the school law as it existed at the time of the transactions involved in this case. In 1917 the legislature enacted a law providing that cities having a population in excess of one hundred thousand inhabitants "shall constitute

one school district which shall maintain a thorough and efficient system of free schools, which shall be under the charge of a board of education, which shall be a body politic and corporate. * * * shall consist of eleven members, to be appointed by the mayor, with the approval of the city council," for certain terms; and that "no power vested in such board of education, or in any of its officers, agents or employees, shall be exercised by the city council of such city." The statute also provides that the taxes for educational and building purposes for such board of education shall be levied by the city, and makes provision for obtaining money from tax anticipation warrants by authorizing the board of education to request the city council to issue tax anticipation warrants, and it is expressly made the duty of the city to comply with the request of the board. The city is required, upon the demand and under the direction of the board of education, to annually levy such taxes. And it is further provided that the moneys raised "shall be held by the city treasurer, *ex officio,* as school treasurer, in separate funds," and may only be paid out on the order of the board of education upon its warrants signed by its president and secretary, and countersigned by the mayor and city comptroller. Ill. Rev. Stat. 1927, chap. 122, secs. 128 to 138 and pars. 152 to 159, both inclusive.

It will be seen from these several provisions that the management of the schools in a city of more than one hundred thousand inhabitants was placed in a board selected in the manner above pointed out; that it performs all of the functions of an ordinary board, except that the taxes are levied by the city in the amount and for the purposes as required by the board; that the warrants shall be issued by the city upon the demand of the board; that the money obtained either by taxation or the sale of warrants shall go into the school fund under the control of the board and paid out only upon the orders of the board; that the treasurer of the city should be *ex-officio* treasurer of the board

of education, and that warrants shall be drawn and signed by the president and secretary of the board, and the mayor and the city comptroller. While this statute provides for dual action over a territory coterminous as to the school district and the city, yet, a reading of the act discloses that the city and the board of education each have separate functions to perform, and neither can perform functions of the other.

It would appear from the statute that although the territory of the city and the school district is coterminous, and some of the officers perform dual duties, they are two separate organizations. The city of Chicago is a municipal corporation, and the statute likewise provides that the board of education is a "body politic and corporate."

In *Mathews* v. *City of Chicago,* 342 Ill. 120, the question before the court involved a statute which gave the board of education authority under the general school law to issue bonds in anticipation of the collection of taxes. The board of education of the city of Chicago by appropriate corporate action authorized the issue of several million dollars of such bonds, and objection was raised as to their validity. The same general provisions of the school law of 1927 were in effect, and the question was raised as to whether these obligations were those of the board of education or those of the city of Chicago. After calling attention to the several provisions of the statute, the court says: "The bonds required the concurrence and joint action of the board of education and the city for their issue and sale. They were required to be signed by the president and secretary of the board of education, sold by the comptroller of the city under the direction of the board of education, and the proceeds to be received by the city treasurer as school treasurer. The execution of the bonds by the mayor and the comptroller or city clerk had no other purpose than to show the city's consent to the issue. The action of the city comptroller, under the direction of the

board of education, was the action of the board of education. The proceeds of the bonds were paid to the city treasurer as *ex-officio treasurer* of the board of education, and there is no reason to doubt that the bonds were the obligation of the board of education." This is an express holding that the functions of the board of education and the functions of the city of Chicago are distinct, and the acts of two separate corporations, although some of their officers may be the same.

The *Mathews case* was cited and followed in *Board of Education* v. *Upham,* 357 Ill. 263, where the authority to create a working cash fund for the board of education was questioned, and, after referring to the *Mathews case,* we again said: "We hold that the board of education of the city of Chicago is a body politic and corporate; that it has bonding powers under section 134-¾ of the above mentioned statute; that it has its own limit of indebtedness under the constitution which is not affected by the indebtedness of the city of Chicago, and that the proposed bond issue does not violate section 12 of article 9 of the State constitution." While the precise point for determination is not the same in these last two cited cases as in that before us now, there is no question but what they hold that the board of education of the city of Chicago is a separate and distinct entity from that of the city; that it has definite powers and distinct obligations, and that the obligation of one is not the obligation of the other.

The analysis of the foregoing seems to cover the question whether there are two funds available with which to pay tax anticipation warrants. Since the tax anticipation warrant does not create an obligation, since it is payable solely from the tax against which it is drawn when collected, since it cannot by statute be "otherwise paid," since, also, the city cannot by the express language of the statute perform any of the duties of the board of education, and since, also, the mayor and the comptroller in signing antici-

pation warrants are acting for the board of education and not for the city, it is impossible to find any basis upon which to hold that the proceeds of the sale of the anticipation warrants constitute a fund upon which warrant holders may rely for payment the same as upon tax collections. To so hold would present the anomalous situation of a lender having a lien not only upon the security he receives, but also upon the money he advances on such security. We hold, as has been held many times, that the only fund available to pay tax anticipation warrants is the money derived from the collection of taxes, and not the proceeds of tax anticipation warrants received by the board or municipality before any taxes have been collected.

Reverting now to the specific charge in the complaint, it is said in the first paragraph, involving the 1928 tax anticipation warrants numbered 124 to 141, inclusive, that the same were paid by the board of education out of the proceeds of the sale of the 1929 warrants. In fact, there is attached to the complaint, as an exhibit, the direction given to the city treasurer to pay these 1928 warrants, dated February 8, 1929; and in another paragraph of the complaint it is shown that on February 8, 1929, the city of Chicago purchased 1929 tax anticipation warrants aggregating sums far in excess of the amounts claimed to have been paid in retiring the 1928 tax warrants.

The fair import of this language is that when the board of education received the proceeds of the sale of the 1929 tax warrants they used some, or all, of this money to retire the 1928 tax warrants. If this is what is intended to be charged it fails to create a cause of action against the city of Chicago, for two basic reasons: In the first place, the payment was made by the board of education, and could only be made by reason of a resolution passed at a meeting of such board of education; and for the further reason that the statute expressly forbids the city from exercising any of the powers of the board of education. The second

basic reason is that there is no liability upon the part of the city to the holder of a warrant, in that the 1928 tax anticipation warrant is paid from the proceeds of the sale of the 1929 warrants, and not from the tax collections themselves. The holder of the tax anticipation warrant is interested in and entitled to collect only from the tax collection itself. He is not entitled to collect from the proceeds of a prior sale of tax anticipation warrants, and since the expenditure of the proceeds of the sale of tax warrants does not diminish the amount of the tax that may be collected, and against which the anticipation warrants are drawn, the holder of a tax warrant is not in any position to complain of the irregularity or illegal actions of the board of education in disposing of the proceeds of tax anticipation warrants. They do not stand in the same position as the people or a taxpayer might stand, but are interested only to the extent that they may require the payment of their anticipation warrants from the tax levy against which it is drawn. This, we believe, disposes of the charge that the city of Chicago became liable when the board of education paid off and retired the 1928 tax anticipation warrants from money allegedly derived from the proceeds of the sale of the 1929 tax warrants.

The alternative cause of action charges that the city of Chicago was the fiscal agent of the board of education and the custodian of its funds received from the sale of the 1929 tax anticipation warrants, and then alleges that said last warrants, aggregating $4,500,000 issued in January and February, 1929, were actually received in exchange for the 1928 anticipation warrants purchased in December, 1928, and January, 1929, and that no money passed in said transaction, but only certain entries were made upon the books of the city, charging the board of education with the amount necessary to pay said 1928 warrants, and that later, in May, 1931, the city received the principal of $4,500,000 on said 1929 warrants, and $509,970 accrued interest, by

reason of which transactions the said sums of money should be restored and made available to pay the plaintiff's and all other like warrants. The foundation of this alternative suit is that the warrants received by the city in exchange were void and the amounts thereof were improperly paid to the city, and therefore, in equity belonged to the legal warrant holders.

The inducement to this alternative charge is that the city of Chicago was the fiscal agent and the custodian of the school funds. There is nothing in the law, nor in the decisions of this court, that so provides or holds, and no facts showing mutual corporate action of the respective corporations are alleged or set out, so necessarily these two allegations are legal conclusions which are without effect in the pleading.

When all conclusions and inducements are disregarded, the alternative suit charges the city issued to itself 1929 warrants, and gave back to the board of education the 1928 warrants. This is directly contrary to the provisions of the ordinance authorizing the issuance of the 1928 warrants, and the resolution of the board of education that such 1928 warrants would be paid out of the first money received from the sale of the 1929 warrants, and directly contrary to the exhibit, showing that the 1928 warrants were paid from the proceeds of the sale of the 1929 warrants. It is singular that the resolutions authorizing the 1929 warrants are not pleaded, or their absence explained.

All the specific facts set forth in the alternative action are that practically concurrent with the sale of the 1929 warrants to the city of Chicago the 1928 warrants were paid by the board of education, and hence the conclusion is drawn, based upon the assumption that the city was a fiscal agent and custodian of the school funds, that there was an exchange of warrants, although contrary to other facts specifically shown by the records of the city of Chicago and the board of education.

The whole transaction between the city of Chicago and the board of education, as shown by the complaint, may be summarized as follows: In December, 1928, and January, 1929, the city purchased of the board $4,500,000 of 1928 anticipation warrants upon a condition embodied in the ordinances and resolutions that such warrants would be paid out of the proceeds of the first 1929 school anticipation warrants sold. The 1929 warrants were sold on February 8, 1929, and on that date the board of education paid and retired the 1928 warrants with the proceeds of the sale of the 1929 warrants. In due course 1929 taxes were collected, and in May, 1931, the 1929 warrants were paid therefrom, as was lawful and proper. No facts are alleged to show such is not what transpired, nor is there any showing that collection of 1928 taxes subsequent to May, 1930, have not been had or used to repay a temporary diversion of funds. Such allegations do not show an illegal issue or disposal of 1929 warrants.

However, if it be assumed that an exchange of warrants is sufficiently charged, and that such transaction was void, the city could not be an express trustee of the money received from the 1929 warrants, when collected. This transaction occurred in 1929, and the suit was commenced in 1946, after seventeen years had elapsed. It is only express trusts that are exempt from the Statute of Limitations or *laches*. (*Lancaster* v. *Springer*, 239 Ill. 472.) There is no express trust in this case. The cases of *Rothschild* v. *Village of Calumet Park*, 350 Ill. 330, and *People ex rel. Anderson* v. *Village of Bradley*, 367 Ill. 301, involve an entirely different situation than that presented here. In those cases the city was an actual custodian of money held for a certain, specific purpose, and diverted the money to an improper use. The statute made it an express trustee, because it placed the duty upon the city to hold the money for a specific purpose. In the instant case, there is

no duty placed upon the city of Chicago to hold any money for the board of education, and the fact that one of its officials is likewise an official of the board of education, as pointed out above, does not make his action any the less the action of the board of education.

Our attention is also called to the case of *Berwind, Inc.* v. *Chicago Park District,* 393 Ill. 317, which also presents an entirely different situation. In that case the tax collections which were available for the payment of tax anticipation warrants for that year were actually used to pay off obligations of the previous year. This was using money for a purpose not appropriated. It was done by a corporation that was liable to suit for an accounting and restitution. It is not like the present case. If any actual wrongdoing was committed in the present case it was by the board of education, and we have held that it is a *quasi*-municipal corporation, not subject to liability to individuals injured by the tortious conduct of its officers or servants. *Leviton* v. *Board of Education,* 374 Ill. 594; *State Life Insurance Co.* v. *Board of Education,* 401 Ill. 252.

The board of education and the city of Chicago both keep records required by law, and we have held that what must be of record must be shown by the record, and that the latter is the only legal evidence. (*People ex rel. Reich* v. *McCoy,* 387 Ill. 288.) To say that the board of education and the city of Chicago refused access to their books and records is not sufficient to show concealment, or fraud, or lack of knowledge upon the part of the plaintiff, because means exist by which access can be compelled. And since the plaintiff could have acquired the knowledge or information which she says she did not have, it has the same legal effect as though she had such knowledge.

In the present case, under the allegations of the alternative cause of action, the most that could be charged against the city was that it became a constructive trustee, and con-

structive trusts are subject to limitation or *laches* after the lapse of five years without action. *Lancaster* v. *Springer,* 239 Ill. 472; *Dean* v. *Kellogg,* 394 Ill. 495.

We have examined the complaint in this case, and all of its allegations, with great care, and have given due effect to the admission made by the motion to strike all of its allegations properly pleaded. Either by accident, incident or design the complaint has been so drawn as to confuse the acts of the city of Chicago with the actions of the board of education, and to charge to the city of Chicago certain illegal actions drawn from legal conclusions, not founded upon any statute or other law or fact properly alleged, which has made necessary a careful study of the complaint in order to give full consideration to all facts properly pleaded. We are satisfied that the complaint does not sufficiently state facts to constitute a cause of action against the city of Chicago, and no judgment or decree is prayed, nor could the same be entered against the board of education of the city of Chicago.

The point has also been made by appellees that the plaintiff cannot properly represent all of the other holders of 1929 anticipation warrants in a class suit. Since the plaintiff herself has shown no cause of action, it is not made any better by adding the number of plaintiffs who have like demands. It is, therefore, not necessary to prolong this opinion by discussing this point.

Although the jurisdiction of this court has been invoked because constitutional questions were presented in the complaint and by the motion to strike, it is not necessary to pass upon such questions if the cause may be properly decided upon other grounds. However, it having been necessary to determine whether constitutional questions were involved, we are required to retain the cause for the decision of the other questions raised in the pleadings. *Groome* v. *Freyn Engineering Co.* 374 Ill. 113; *Geiger* v. *Merle,* 360 Ill. 497.

The briefs in the case have covered a wide range, and many questions are discussed and argued which we have not noted in this opinion for the reason that we believe the points we have discussed are determinative of the real issues raised therein.

We are of the opinion that the decree of the superior court of Cook County was correct, and it is accordingly affirmed.

*Decree affirmed.*