**Delbert Neece, Plaintiff-Appellant, v. Walter Dohren, Defendant-Appellee.**

**Gen. No. 10,699.**

Fourth District.

July 27, 1966.

Rehearing denied August 29, 1966.

 

Giffin, Winning, Lindner & Newkirk, of Springfield (James M. Drake, of counsel), and Niven & Clay, of Pontiac (Alonzo Clay, of counsel), for appellant.

Adsit, Thompson, Strock & Strong, of Pontiac, for appellee.

CRAVEN, J.

The plaintiff, by this action, sought specific performance of an alleged contract for the sale of real estate or as alternative relief damages for breach of the contract. Ultimately, on motion of the defendant, the court entered an order striking the plaintiff's complaint and dismissing the action. Judgment was entered for the defendant and this appeal is from that judgment.

The material facts relating to this controversy are supplied by the complaint and its attendant exhibits. From these pleadings the following factual situation may be determined. The defendant was the owner of a 195-acre farm. In January of 1965 the parties discussed the sale of the farm by telephone at a price of $500 an acre. This telephone conversation was by long-distance phone, the plaintiff in Illinois and the defendant in California. Subsequent to this conversation and allegedly pursuant thereto, the plaintiff sent to the defendant a written offer for the purchase of the farm. On January 18, 1965, the defendant wrote the plaintiff a letter in which the sale of the farm was discussed in considerable detail as was the sale of certain crops then in storage and the tax consequences of the sale. The letter concluded the discussion by inquiring of the plaintiff:

> "How does this sound to you?
> "Let me hear your decision as soon as possible because if you don't buy it, I will put it in the hands of Alex McWilliams."

The complaint then alleges that on January 24, 1965, the plaintiff telephoned an acceptance of the terms as set forth in the letter, followed on January 30 by a check to the defendant in the amount of $2,500 as an alleged down payment. On February 8 the defendant returned the check and by his letter of transmittal the defendant stated that he had been waiting for a letter, as well as a contract to evaluate, and since these items had not arrived he had reconsidered his position and was cancelling further progress on the projected sale. Thereafter the plaintiff, through his attorney, sent the defendant two checks totalling $10,500 and a proposed contract, signed by the plaintiff, describing the premises and making provisions for the payment of the purchase price and the usual provisions relevant to a contract for the purchase of land. The checks and contract were returned by the defendant to the plaintiff, and again by the letter of transmittal, the defendant stated:

> ". . . I thought that we had agreed on terms and you promised to have a contract sent. I waited for many days for this contract and it never arrived. On January 30, 1965—many days after our tentative agreement—Mr. Dunn sent a check for $2,500 and again promised that a contract would follow. None came.
>
> ". . . I returned the check and cancelled out any further dealings." . . .

The complaint alleges that thereafter the defendant entered into a contract with a third party to sell the premises at a price substantially higher than that involved in the negotiation between these parties.

■■ The motion of the defendant asserts the absence of an agreement between the parties, the invalidity of an agreement if one was in fact made by reason of the statute of frauds, and other grounds relating to the sufficiency of the memoranda under the statute of

frauds. This court has for consideration only the complaint, its exhibits and the motion, and in testing the sufficiency of these pleadings we must take as true all well-pleaded allegations of fact. Pierce v. Carpentier, 20 Ill2d 526, 169 NE2d 747 (1960). Schreiner v. City of Chicago, 406 Ill 75, 92 NE2d 133 (1950). This rule does not, of course, apply to conclusions of law. In considering these pleadings, the exhibits constitute a part of the pleadings for all purposes, in accordance with section 36 of the Practice Act (Ill Rev Stats 1963, c 110, par 36).

It is the essence of the plaintiff's contention that the initial phone call constituted an offer by him to buy and that the defendant's first letter was a counteroffer, which counteroffer was accepted by the plaintiff in the manner intended, thereby establishing as between the parties an enforceable contract, the letter being signed by the party sought to be bound and the mutuality of remedy being no longer an essential part of specific performance for the sale of land.

The parties have filed excellent briefs, detailing their positions with reference to the applicability of the statute of frauds as well as mutuality of remedy. These questions are not reached, however, unless from these pleadings the plaintiff establishes that the negotiations between the parties ultimately culminated in an agreement to buy and sell. Then and only then would the sufficiency of the memoranda of their agreement be considered.

██ It is our conclusion that these pleadings establish only negotiations that did not ripen into an agreement between the parties. The letter of the defendant of January 18 is not a counteroffer, but rather one step in the negotiation process. It is further clear that the actions of the plaintiff subsequent to that letter were clearly inconsistent with the present contention that the letter and the telephone acceptance constituted a binding agreement. The fact that in January the parties were

436

engaged in a process of continuing negotiation is apparent by examining plaintiff's exhibit C in which, over a month after the alleged agreement, he caused the terms and conditions of a proposed contract to be reduced to writing and mailed the same to the defendant, together with two checks representing a down payment. In the case of Whitelaw v. Brady, 3 Ill2d 583, 590, 591 (121 NE2d 785, 790 (1954)), in discussing offers and acceptances, the court said:

">". . . These propositions are aptly stated in Selections from Williston on Contracts, Revised Edition (1938), at page 42: 'It is a necessary requirement in the nature of things that an agreement in order to be binding must be sufficiently definite to enable a court to give it an exact meaning. If an offer contemplates an acceptance by merely an affirmative answer, the offer itself must contain all the terms necessary for the required definiteness. An offer may, however, contain a choice of terms submitted to the offeree from which he is to make a selection in his acceptance. Such an offer is necessarily indefinite but, if accepted in the way contemplated, the ultimate agreement of the parties is made definite by the acceptance. A lack of definiteness in an agreement may concern the time of performance, the price to be paid, work to be done, property to be transferred, or miscellaneous stipulations in the agreement.' "

The reasoning of the court in Whitelaw is determinative of the issues here. That which is here sought to be enforced as an agreement between the parties is but one step in a negotiating process wherein the proposals and counterproposals, each to the other, resulted in a narrowing of the differences between the parties on certain matters, leaving always specifics yet to be determined.

The circuit court of Livingston County, therefore, properly entered judgment for the defendant in this case, and that judgment is affirmed.

Affirmed.

TRAPP, P. J. and SMITH, J., concur.